**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL PRODUCTS LTD., a Hong Kong corporation, et al., <br><br> Defendants. | No. CV 10-07083 JAK (SSx) <br><br> **MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS IN THE AMOUNT OF $6,920.18 FILED PURSUANT TO DECEMBER 20, 2011 ORDER OF THE COURT** <br><br> **(Docket No. 235)** |

**I.**

**INTRODUCTION**

On December 9, 2011, defendants National Products Ltd. and Playmind Ltd. (collectively, "Defendants"), appearing specially for third party Fun Creation, Inc. ("Fun Creation"), filed an "Ex Parte Application to Quash Subpoena to Fun Creation, Inc." (the "Ex Parte Appl."), including, among other documents, the declaration of Steve Haney ("Haney Ex Parte Decl."). (Dkt. No. 178). In the Ex Parte Application, Defendants sought an Order quashing the subpoena for the deposition of Fun Creation

served on Vincent Thai, president of Defendant National Products and Fun Creation, during Mr. Thai's deposition in Hong Kong on December 1, 2011. (Ex Parte Appl. at 1).   Plaintiffs MGA Entertainment, Inc. and Little Tikes Company, Inc. (collectively, "Plaintiffs") filed an Opposition to the Ex Parte Application and a request for an Order to Show Cause Re Sanctions against National Products on December 12, 2011 (the "Ex Parte Opp."), as well as, among other documents, the declaration of Robert M. Collins ("Collins Ex Parte Decl.").   (Dkt. No. 182).   On December 13, 2011, Defendants filed a Response to Plaintiffs' Opposition (the "Ex Parte Reply").   (Dkt. No. 187).   The Court denied the Ex Parte Application on December 20, 2011 on the grounds that Defendants had failed to comply with Federal Rule of Civil Procedure 37 and this Court's Local Rules (the "Ex Parte Order").   (Dkt. No. 213).   At the same time, the Court issued an "Order to Show Cause re Sanctions against Defendant National Products, Ltd. and/or Defendant's Counsel" because Defendants' conduct in connection with the Fun Creation subpoena (the "Order to Show Cause" or "OSC").   (Id. at 4).

On January 3, 2012, Plaintiffs filed an "Application for Attorneys' Fees and Costs in the Amount of $6,920.18 Filed Pursuant to December 20, 2011 Order of the Court" (the "Fee Appl."), including, among other documents, the Declaration of Robert M. Collins ("Collins Fee Decl."). (Dkt. No. 235).   On the same date, Defendants filed the "Declaration of Steven H. Haney in Response to Order to Show Cause re Sanctions" ("Haney Sanctions Decl."), as well as, among other documents, the declarations of Heng Lee ("Lee Decl."), Wendy Wong ("Wong Decl."), Naroun Chuon ("Chuon Decl."), Vincent Thai ("Thai Decl."), Doungveansa So ("So Decl."), Andy Mai ("Mai Decl."), and Jose Yanez ("Yanez Decl.").   (Dkt.

No. 234).  The declarations filed on Defendants' behalf on January 3,
2012 substantively argued that sanctions should not be imposed, but did
not address the specific amount of attorneys' fees and costs requested
by Plaintiffs.  On January 4, 2012, Plaintiffs filed a Supplemental
Declaration of Robert M. Collins in Support of Plaintiffs' Application
for Attorneys' Fees and Costs ("Collins Supp. Fee Decl."). (Dkt. No.
238).  On January 5, 2012, Defendants filed a document captioned
"Defendant's Response to Plaintiff's Application for Attorney's Fees and
Costs in the Amount of $6,920.18 Filed Pursuant to December 20, 2011
Order of the Court" ("Fee Opp."), including, among other documents, the
declaration of Steven H. Haney ("Haney Fee Decl."). (Dkt. No. 240).
Although the Fee Opposition specifically refers to Plaintiffs' separate
"Motion for Reconsideration" not at issue here, (Fee Opp. at 1; see also
Motion for Reconsideration, Dkt. No. 205), and the Haney Fee Declaration
confusingly addresses in paragraph four a matter relevant to the Motion
for Reconsideration, (Haney Fee Decl. at 3), and attaches as an exhibit
the declaration of Gregg Adelsheimer in response to the Court's Order
on the Motion for Reconsideration,[1] the remainder of the Haney Fee
Declaration appears to track and address the Collins Fee Declaration
filed on January 3, 2012 regarding the appropriate amount of sanctions

---

[1] The declaration of Gregg Adelsheimer is both attached as "Exhibit
1" to the Haney Fee Declaration (Dkt. No. 240) and filed separately as
a stand alone document.  (Dkt. No. 248).  The docket entries for Mr.
Adelsheimer's declaration and the simultaneously-filed declaration of
Lam Siu Ping Jillian (Dkt. Nos. 248-49) indicate that they were filed in
"Opposition to the Application for Attorney Fees pursuant to December
20, 2011 Order of the Court."  However, these docket descriptions appear
inaccurate because the substance of the Adelsheimer and Lam declarations
concerns the Court's December 29, 2011 award of sanctions for
Defendants' failure to produce contracts, not the December 20, 2011
Order to Show Cause based on the Ex Parte Application to Quash Subpoena
to Fun Creation, which is at issue here.

1   that should be awarded in connection with the <u>Ex Parte</u> Application to

2   Quash the Fun Creation subpoena. (Haney Fee Decl. ¶¶ 5-12). The Court

3   held a hearing on the Order to Show Cause and Plaintiffs' Fee

4   Application on January 9, 2012.

5

6       For the reasons stated below, the Court GRANTS Plaintiffs'

7   Application for Attorneys' Fees and Costs, but reduces the award as

8   discussed below.

9

10                              **II.**

11                     **FACTUAL BACKGROUND**

12

13   **A.   <u>Fun Creation's Close Relationship With National Products</u>**

14

15       The record establishes that Fun Creation has a singularly close

16   relationship with Defendant National Products that is suggestive of an

17   alter ego situation.[2]  Courts look to multiple factors to determine

18   whether a particular corporation operates as the alter ego of another

19   corporation. "Under California law, a corporate identity may be

20   disregarded where an abuse of the corporate privilege justifies holding

21   the equitable ownership of a corporation liable for the actions of the

22   corporation . . . . Under the alter ego doctrine, then, when the

23   corporate form is used to penetrate a fraud, circumvent a statute, or

24

25   _____

26       [2] Neither party fully briefed or presented evidence on the issue of whether Fun Creation is an alter ego of National Products. The Court
27   need not and does not conclusively decide this issue for the present motion. The Court finds it relevant to review the two entities'
     relationship for purposes of examining National Products' role in
28   obstructing discovery on Fun Creation.

accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation . . . ." Walsh v. Kindred Healthcare, 798 F. Supp. 2d 1073, 1082 (N.D. Cal. 2011) (internal citations and quotations omitted). "Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities . . . identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." Id. (internal citations and quotations omitted).

Several alter ego factors are apparent in the relationship between National Products and Fun Creation. Fun Creation is a California corporation based in City of Industry, California. (Wong Decl. ¶ 2). Since its creation in 2005, Fun Creation has served as the Service and Fulfillment Center for National Products and has also been a customer for National Products' merchandise. (Id. ¶ 4). Fun Creation was one of the companies listed in the parties' Settlement Agreement as a distributor authorized to sell existing inventory of Plaintiff's Little Tikes-branded toys. (Id. ¶ 5). Fun Creation's offices are located in the same general building area as National Products.

Vincent Thai, president of National Products, helped his sister, Wendy Wong, set up Fun Creation in 2005. (Thai Decl. ¶ 3). Mr. Thai is listed as the president of Fun Creation in corporate filings with the California Secretary of State, (see Collins Ex Parte Decl. ¶4; id., Exh. B at 1), and Mr. Thai's family members appear to play significant roles in the operation of Fun Creation. (See, e.g., Wong Decl. ¶ 3). Fun

1  Creation does business as National Products Ltd. in the United States.

2  (See Declaration of Craig Holden, Exh. B at 23 (email from Jillian Lam

3  to Gregg Adelsheimer dated December 14, 2011), Dkt. No. 205).   Fun

4  Creation has assigned National Products email addresses ("@npl.com") to

5  its employees.  (See November 28, 2011 Transcript, Testimony of Naroun

6  Chuon, at 25, Dkt. No. 219; Parco Dec., ¶ 2, Dkt. No. 87).   Mr.

7  Adelsheimer, National Products' "U.S. Sales Representative", testified

8  that contracts between National Products and third party distributors

9  are likely kept either at National Products' office in Hong Kong or at

10 Fun Creation's office in Los Angeles. (Adelsheimer Deposition, Dec. 15,

11 2011, rough transcript, at 145).

12

13      Defendants' counsel also represents Fun Creation in this

14 litigation.  In addition to "appearing specially" for Fun Creation in

15 attempting to quash the subpoena on that company, Defendants' counsel

16 has "appeared specially" for Fun Creation employees in connection with

17 the motions to quash subpoenas for their depositions. (See Dkt. Nos.

18 87, 89, & 137).[3]  The close relationship between National Products and

19 Fun Creation is further demonstrated by the fact that Defendants were

20 able to obtain declarations from numerous Fun Creation employees to

21 support their response to the instant Order to Show Cause, including Fun

22 Creation's agent for service of process, Heng Lee; Fun Creation's "owner

23

24 _____

25      [3] At an evidentiary hearing held on November 28, 2011, Ms. Chuon
   testified that she works for Fun Creation. (Transcript of Hearing, Dkt.
   No. 219, at 16). Ms. Parco's declaration does not identify her employer
26 by name but ambiguously describes it as "a company in Southern
   California that is a Service Center for numerous companies."
27 (Declaration of Maria Parco, Dkt. No. 87, ¶ 3).  She admits, however,
   that she was assigned a National Products email address by her employer,
28 which is a practice of Fun Creation. (Id.).

and general manager" (and Mr. Thai's sister), Wendy Wong; and Fun Creation employees Naroun Chuon, Andy Mai, and Jose Yanez. (See Lee Decl. ¶ 1; Wong Decl. ¶ 2; Choun Decl. at 1-2; Mai Decl. ¶ 1; Yanez Decl. ¶ 1).  The Court has already determined that documents kept at Fun Creation's Los Angeles facilities are under Defendants' control for discovery purposes and must be produced.  (See Order, Dkt. No. 231, at 19).  Therefore, numerous alter ego factors are established and National Products may be held responsible for the wrongful conduct of Fun Creation in connection with the current dispute.

**B.**   **Plaintiffs Attempted To Serve Fun Creation Domestically On Several Occasions Prior To Serving Mr. Thai In Hong Kong**

Plaintiffs made several attempts to serve Fun Creation domestically before effectuating service on Mr. Thai in Hong Kong.  Plaintiffs twice attempted to serve Heng Lee, Fun Creation's registered agent for service of process, at his address in Monterey Park, California listed with the California Secretary of State.  (Collins Fee Decl. ¶ 2; Collins Ex Parte Decl., Exh. A at 1).  According to the affidavit of the process server, there was no one at home during the first attempt at service, on Thursday, September 29, 2011, at 7:30 p.m.  (Collins Ex Parte Decl., Exh. A at 1).  During the second attempt, on Saturday, October 1, 2011 at 10:17 a.m., the process server was told by an unidentified "Asian female" that the subject Mr. Lee was "unknown" and that the listed address was the "Alleyar" residence.  (Id.).

Following these unsuccessful attempts at service, Plaintiffs twice attempted to serve Fun Creation at its place of business in City of

7

Industry, California.  According to a billing statement from Plaintiffs' process server, on Wednesday, November 9, 2011, the subpoena and witness fee check were delivered to Andy Mai, who signed for their receipt. (Collins <u>Ex Parte</u> Decl., Exh. H, at 2).  Andy Mai states in his declaration that he is employed by Fun Creation as a worker in the warehouse but is not a manager.  (Mai Decl. ¶¶ 1, 3).  He admits, however, that he was handed a "check and papers" by "a female" on that date.  (<u>Id.</u> ¶ 2).  According to an affidavit completed by the process server, Plaintiffs attempted to serve Fun Creation at its facilities a second time on Thursday, November 10, 2011, at 11:25 a.m.  The process server noted:

> Upon my arrival the business gate was locked, a male then came out and said he would take the subpoena, but did not give his name.  He did not allow me any access into the building and said that they informed him to tell the server they didn't want the papers and to not give out his name.  He was a Hispanic male . . . .

(Collins <u>Ex Parte</u> Decl., Exh. A, at 2).  Jose Yanez, a Fun Creation warehouse employee, states in his declaration that on that date, he observed a person approach the warehouse who, upon discovering that the warehouse was locked, "threw documents through the gate," which landed on the ground.  (Yanez Decl. ¶ 2).  Mr. Yanez states that he was not handed the documents and is not authorized to accept service on behalf of Fun Creation.  (<u>Id.</u> ¶ 3).

On December 1, 2011, Plaintiffs served a deposition subpoena on Fun Creation through its registered company president, Vincent Thai, at Mr. Thai's deposition in Hong Kong, a deposition location that he demanded in a motion before this Court. (Fee Appl. at 3; see also Dkt. No. 91, Order Granting in Part and Denying in Part Defendants' Motion for Protective Order to Require Depositions of Defendants' PMQ and Vincent Thai to Take Place in Hong Kong and Request for Sanctions, at 2). The deposition was noticed for Monday, December 12, 2011. (Collins Ex Parte Decl., Exh. C at 2). Defendants filed their Ex Parte Application to Quash Subpoena to Fun Creation on Friday, December 9, 2011 at 8:51 p.m. (Id., ¶ 3).

## C. Defendants And Fun Creation Repeatedly Deterred Plaintiffs' Efforts To Obtain Discovery From Fun Creation And Its Employees

Defendants admit that Plaintiffs' attempts to serve Fun Creation at its facilities in November 2011 put them on notice of Plaintiffs' intent to depose Fun Creation. (See, e.g., Ex Parte Appl. at 11) ("The first attempt to serve a deposition subpoena [on Fun Creation] was handing a subpoena for a November 10, 2011 deposition to a low level employee in a warehouse. The second attempt was to toss the subpoena for a November 22, 2011 deposition over a fence. The third attempt is . . . having one of Plaintiffs' attorney[s] hand a void subpoena signed by another of the Plaintiffs' attorneys to Vincent Thai in Hong Kong . . . ."). However, Fun Creation and Defendants were aware of Plaintiffs' intent to pursue discovery from Fun Creation and its employees well before these attempts were made and repeatedly obstructed Plaintiffs' efforts.

1    For example, Plaintiffs notified Defendants as early as September

2  7, 2011 that they intended to depose Fun Creation employee Naroun Chuon.

3  (See Declaration of Robert M. Collins in Support of Plaintiffs'

4  Opposition to Motion to Quash, etc., Exh. A, at 1-2, Dkt. No. 82).

5  Defendants moved to quash that deposition subpoena, (Dkt. No. 87), which

6  the Court denied for Defendants' failure to comply with the Local Rule

7  requiring counsel to meet and confer before filing a motion to quash.

8  (Order, at 1, Dkt. No. 106).  On October 21, 2011, Plaintiffs served

9  another subpoena for Ms. Chuon's deposition at the office of Defendants'

10  counsel, which counsel rejected on the ground that his office was "not

11  authorized to accept service of the deposition subpoena on her behalf,"

12  even though counsel would eventually represent Ms. Chuon in a motion to

13  quash and at her deposition.  (See Supplemental Declaration of Steve

14  Haney re Motion of Naroun Ch[uo]n to Quash, ¶¶ 3-4, Dkt. No. 139).  On

15  November 2, 2011, Plaintiffs attempted personal service on Ms. Chuon,

16  which involved two trips by the process server to Ms. Chuon's home.

17  (See Decl. of Kevin Appleton, ¶¶ 3-4, Dkt. No. 170).  On November 1,

18  2011, the process server went to Ms. Chuon's home, where he observed a

19  blue car that, according to a search of the license plate number, was

20  registered to Ms. Chuon.  (Id. at 3).  When the process server returned

21  on November 2, 2011, he witnessed a woman entering the blue car who

22  responded "yes" when the process server asked if she was Naroun Chuon

23  and handed her the subpoena.  (Id. ¶¶ 4-5).

24

25    Defendants moved to quash the November 2 subpoena in part on the

26  ground that requiring Ms. Chuon to appear for deposition would "impose

27  an undue burden on her."  (Motion to Quash Subpoena for Deposition of

28  Naroun Chuon to Testify at Deposition, at 3, Dkt. No. 137).  Defendants

argued that Ms. Chuon was the "primary and only care-giver" for her
elderly mother, who required constant attention. (Id.). Defendants
emphasized that "[r]equiring Naroun Chuon to leave her elderly mother
alon[e] or with strangers, putting Naroun Chuon in a position where she
may lose her mother from a fall is an undue burden. Such a fall may be
fatal. A potential witness in a business dispute should not have to
face the choice of losing an elderly parent or disregarding a subpoena."
(Id. at 4). To resolve certain factual disputes raised in the Chuon
Motion to Quash relating to service of the Chuon subpoena, the Court
held an evidentiary hearing on November 28, 2011. (See Order, Dkt. No.
163, at 1). Ms. Chuon testified that she leaves her home once a day for
one to two hours to run errands such as grocery shopping. (Transcript
of Nov. 28, 2011 Hearing at 25-26, Dkt. No. 219). She further testified
that between 2005 and June 2011, she was a full-time student at Cal
Poly-Pomona, where she was also involved in student organizations. (Id.
at 26). After Ms. Chuon's mother suffered the stroke in December 2010
that left her allegedly disabled, Ms. Chuon nonetheless took "three or
four" classes that required her to be on campus two afternoons a week.
(Id. at 27). At the same time, Ms. Chuon was a member of the Management
Information Student Association, which met once a week for hour-long
meetings. (Id. at 27-28). Ms. Chuon testified that her thirty-two year
old brother lived with her in their mother's home, as did her thirty-
year old sister, thirty-one year old brother-in-law, and two young
nieces. (Id. at 28-29). These facts, that Ms. Chuon was a full-time
student despite her alleged inability to leave her mother alone and that
other adults lived in the same home, completely undermined Defendants'
assertion that a deposition would require Ms. Chuon to "endanger" her
mother or "leave her with strangers."

1    The Court ultimately denied Defendants' motion to quash the Chuon
2    subpoena because Defendants failed to comply with the Local Rules. (See
3    Order, Dkt. No. 163, at 2).    However, because the process server
4    admitted that the person he personally served was not actually Ms.
5    Chuon, the Court also denied Plaintiffs' motion to enforce the Chuon
6    subpoena for lack of jurisdiction. (Id.).

7

8    Defendants were also aware of Plaintiffs' interest in Fun Creation
9    when Defendants moved to quash the Maria Parco subpoena on September 28,
10   2011. Defendants claimed that Ms. Parco was not properly served. (See
11   Dkt. No. 87, at 1; id., Parco Decl., ¶¶ 2-3). According to Ms. Parco's
12   declaration, a process server appeared at her mother's door and "threw
13   the subpoena on the porch and walked away" after her mother told the
14   server that Ms. Parco did not live there. (Id. ¶ 2). Ms. Parco claimed
15   that she never saw the subpoena. (Id.). However, according to
16   Plaintiffs' process server, service was effective:

17

18       On September 17, 2011 at 7:14 pm a woman answered [the] door
19       and when asked if she was Maria Parco, stated, "yes I am." I
20       then handed the Subpoena to Maria and she then started to read
21       over the document and once she realized what it was, she
22       stated that she was not going to accept it. I explained to
23       her that she was already served and then she got upset and
24       said she was not Maria Parco at which point I asked for
25       identification, which she refused to show. I informed her
26       that she was served and then Maria threw the documents on the
27       lawn and I left the property.
28   (Declaration of Cathy Jo Garcia, at 1, Dkt. No. 96).

1    Without citation to any case or statute, Defendants contended that
2    "[u]nless and until [process server] Ms. Garcia can identify the person
3    she served with a physical description, height, weight, age, ethnicity,
4    her declaration is legally insufficient to constitute proof of service."
5    (Reply Memorandum, Dkt. No. 100, at 2).  Ms. Parco submitted another
6    declaration claiming that Ms. Garcia's statements regarding service "are
7    absolutely false."  (Parco Decl., Dkt. No. 102, ¶ 2).  The Court denied
8    Defendants' Motion for yet another violation of the Local Rules.  (See
9    Order at 1, Dkt. No. 106).

10

11   **D.    Defendants' Conduct With Respect To Fun Creation And Its Employees**
12         **Appears Part Of A Pattern To Evade And Delay Discovery**

13

14    Defendants were well aware that Plaintiffs were pursuing discovery
15   from Fun Creation for months before Mr. Thai was served with the Fun
16   Creation deposition subpoena.  Rather than coordinate the deposition
17   with Plaintiffs' counsel, Defendants raised highly technical objections
18   and appeared to engage in service-related gamesmanship to avoid
19   discovery.  Defendants' tactics regarding the Fun Creation deposition,
20   combined with Defendants' misrepresentations to the Court concerning the
21   existence of certain agreements or contracts, raises concerns regarding
22   Defendants' conduct in connection with their discovery obligations.
23   (Order, Dkt. No. 231, at 10-13).  As discussed more fully in this
24   Court's Order granting Plaintiffs' Motion for Partial Reconsideration
25   of the Court's October 3, 2011 Order and Request for Sanctions,
26   Defendants repeatedly told Plaintiffs and the Court that all of National
27   Products' contracts with distributors were verbal.  (Id. at 10-11).
28   Third party productions of written contracts between National Products

and distributors proved Defendants' assertions to be false. (Id. at
11). When Plaintiffs presented compelling proof to Defendants' counsel
that National Products did, in fact, enter into written agreements,
Defendants argued that they did not have "control" over documents
retained by their U.S. Sales Representative, rather than conduct a
search for any additional documents, and continued to assert that
National Products did not have any written contracts during the relevant
time frame, despite evidence to the contrary. (See Opposition to Ex
Parte, Dkt. No. 212, at 3-4, 6-7). As previously mentioned, National
Products' U.S. Sales Representative identified numerous distributors
that required written agreements and stated that copies of such
agreements were likely held by National Products in Hong Kong or Fun
Creation in Los Angeles. (Order, Dkt. No. 231, at 11-12).[4] Defendants'
conduct over time demonstrates ongoing efforts to obstruct certain
discovery.

**E.  The Court Denied Defendants' Ex Parte Application to Quash
Subpoena To Fun Creation On Procedural And Substantive Grounds**

The Court denied the underlying Motion to Quash Subpoena to Fun
Creation on the grounds that Defendants failed to comply with the Local
Rule requiring counsel to meet and confer in good faith regarding the
substance of a discovery dispute and to notify opposing counsel orally

---

[4] Mr. Adelsheimer's subsequent efforts to qualify or completely
change his prior statements as to the circumstances in which he saved or
did not save written agreements and who may currently have them do not
alter the fact that Defendants' representation to the Court that
National Products simply did not enter into written agreements was
false. (See Adelsheimer Dec., Dkt. No. 248, ¶¶ 3-9).

1   as to the timing and basis of an <u>ex parte</u> application.  (<u>See</u> Order at

2   2-3, Dkt. No. 213).  The Court further noted, however, that service of

3   the subpoena on Fun Creation through Mr. Thai at his deposition in Hong

4   Kong was effective.  Defendants' primary basis for challenging service

5   was 28 U.S.C. § 1783, which requires a court order authorizing service

6   of a subpoena on a U.S. national residing in a foreign country.

7   However, as the Court discussed, the statute is intended to protect

8   United States <u>nationals</u> residing abroad from being subject to an undue

9   burden by being required to appear for deposition in the United States,

10  except when their testimony is necessary in the interest of justice.

11  <u>United States v. Johnson</u>, 735 F.2d 1200, 1203 (9th Cir. 1984).  The

12  Court found that Fun Creation is a California corporation that by

13  definition does not reside abroad and will suffer no burden of the type

14  section 1783 is designed to protect by being required to appear for

15  deposition in California.  The Court also noted that Mr. Thai's

16  deposition was held in Hong Kong at Defendants' request, and it was

17  therefore improper for Defendants to then utilize the location of the

18  deposition as a basis to contest service.  (Order at 3, Dkt. No. 213).

19  The Court determined that Defendants' argument that Mr. Thai is not an

20  officer, director or employee of Fun Creation was completely unavailing,

21  particularly because Mr. Thai is listed as the president of the company

22  in corporate filings with the California Secretary of State.  (<u>Id.</u> at

23  4).  The Court also found that Defendants' argument that Plaintiffs had

24  not notified Defendants of the Fun Creation subpoena was similarly

25  unsupported by the record.  (<u>Id.</u>).

26

27      In sum, Defendants' Motion to Quash the Subpoena to Fun Creation

28  was wholly without merit.

### III.

### THE PARTIES' CONTENTIONS RE SANCTIONS

In their underlying Opposition to Defendants' Ex Parte Application to Quash Subpoena to Fun Creation, Plaintiffs argued that sanctions are warranted because despite Plaintiffs' numerous attempts to serve the subpoena, Fun Creation evaded service and delayed the deposition by having an invalid agent for service of process, by refusing to accept service at its facilities in Los Angeles County, and by filing a meritless Ex Parte Application to Quash. (Ex Parte Opp. at 10-11). Plaintiffs request $6,920.18 in total fees and costs. (Id., ¶¶ 12-13).

In response to the OSC, Defendants contend that sanctions are not warranted. Defendants emphasize that the day before the OSC issued, counsel stipulated before Judge Kronstadt to make Fun Creation available for deposition. (Haney Sanctions Decl., ¶ 2). Defendants further contend that Fun Creation's agent for service of process does in fact reside at the address provided. (Id., ¶ 2; Lee Decl., ¶ 1). Defendants argue that "at no time did anyone make any effort to serve Wendy Wong at her place of business in the City of Industry, CA, although Ms. Wong goes to work on a daily basis," and that had Ms. Wong been "aware of anyone asking to see [her] for purposes of serving . . . a subpoena," she would have accepted it. (Haney Sanctions Decl., ¶ 4; Wong Decl., ¶ 6). Defendants continue to assert that although Mr. Thai may be listed as Fun Creation's President with the California Secretary of State, he does not own or manage Fun Creation, (Haney Sanctions Decl., ¶ 4), and is "not authorized to accept service of any documents on behalf of Fun Creation[]." (Thai Decl., ¶ 7). Defendants further note

that Plaintiffs could have effected service by serving the Secretary of State.  (Haney Sanctions Decl., ¶ 10).[5]  According to Defendants, if fees are awarded, Plaintiffs' reasonable attorneys' fees should not exceed $1,499.  (Id., ¶ 12).

## IV.

## DISCUSSION

**A.   The Court Has Authority To Impose Sanctions Under Rule 37 And Its Inherent Power To Oversee Discovery And Manage Its Docket**

"[D]istrict courts enjoy very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial."  Lee v. Max Int'l, LLC, 638 F.3d 1318, 1320 (10th Cir. 2011) (internal citation and quotation omitted); see also Unigard Sec. Ins. v. Lakewood Engineering & Mfg. Corp., 982 F.2d

---

[5] Defendants also note that Plaintiffs have "fought every step of the way to avoid disclosure of any information to support the allegations in their Complaint" by asserting baseless, boilerplate objections and have engaged in deceptive behavior without being sanctioned. (Haney Sanctions Decl., ¶¶ 6, 13).  Defendants note that at the evidentiary hearing, Plaintiffs' counsel failed to disclose to the Court that the process server informed counsel that the person he had served was not the person who identified herself as Naroun Chuon in Court.  (Id., ¶ 8).  According to Defendants, the Court could have sanctioned Plaintiffs' counsel, but did not, after granting Defendants' Motion for Protective Order based on Plaintiffs' noticing the depositions of Mr. Thai and National Products' Person Most Knowledgeable in Los Angeles without consulting with Defendants.  (Id., ¶ 9).  Defendants further argue that they have cooperated in discovery by, for example, stipulating to extra time for the deposition of National Products' PMK.  (Id., ¶ 11).  These arguments are unavailing, however, because as the Court has repeatedly reminded both parties, wrongful conduct by one party, perceived or real, does not justify wrongful conduct by the other party and is not a defense.

363, 368 (9th Cir. 1992) ("Courts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'")(internal quotations omitted). "Sanctions are intended to ameliorate prejudice caused to an innocent party by a discovery violation, punish the party that violated its obligations, and/or deter others from committing similar violations." Urban v. United States, 2006 WL 2037354 at *9 (N.D. Ill. July 14, 2006). "[T]he court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct." In re September 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 131-32 (S.D. N.Y. 2007). When determining what sanctions are appropriate, courts generally consider (1) the success of the moving party, (2) prejudice to the party, (3) ability to cure prejudice, and (4) bad faith or willfulness. David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003).

In addition to the Court's inherent powers to impose sanctions, "[a] district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion." Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2nd Cir. 2006). While Rule 45 does not expressly identify failed motions to quash as a basis for sanctions, district courts have imposed reasonable expenses upon moving parties following an unsuccessful motion to quash. O'Neal v. Capital One Auto Finance, Inc., 2011 WL 2649711 at *4 (N.D. W.Va. July 6, 2011); see also Robertson v. Cartinhour, 711 F. Supp. 2d 136,

1  138 (D.D.C. 2010) (awarding attorneys' fees where plaintiff's "decision

2  . . . to move to quash" was "reckless and in bad faith"); <u>Baldus v.</u>

3  <u>Members of the Wisconsin Gov't Accountability Bd.</u>, 2012 WL 10610 at *3-4

4  (E.D. Wis. Jan. 3, 2012) (imposing sanctions against defendants'

5  attorneys for filing "frivolous motions to quash" that were part of a

6  pattern of "disinformation, foot-dragging and obfuscation" by the

7  attorneys); <u>American Seeds, LLC v. Watson</u>, 2010 WL 3843002 at *2 (D.S.D.

8  Sept. 27, 2010) (ordering third party to pay plaintiff's attorneys' fees

9  incurred in responding to a "late frivolous motion to quash").

10

11   Federal Rule of Civil Procedure 37(a)(5)(B) states:

12

13   If the [discovery] motion is denied, the court . . . must,

14   after giving an opportunity to be heard, require the movant,

15   the attorney filing the motion, or both to pay the party or

16   deponent who opposed the motion its reasonable expenses

17   incurred in opposing the motion, including attorney's fees.

18

19  Fed. R. Civ. P. 37(a)(5)(B). The purpose of the rule is to "protect

20  courts and opposing parties from delaying or harassing tactics during

21  the discovery process." <u>Cunningham v. Hamilton County</u>, 527 U.S. 198,

22  208, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999). Consequently, "if a

23  motion to quash is opposed and the moving party loses, the opposing

24  party may seek attorney's fees and expenses unless the court is

25  convinced that the losing party was 'substantially justified' or 'other

26  circumstances' exist making such an award 'unjust.'" <u>Ceramic Corp. of</u>

27  <u>America v. Inka Maritime Corp., Inc.</u>, 163 F.R.D. 584, 589 (C.D. Cal.

28  1995) (quoting Fed. R. Civ. P. 37(a)(5)(B)).

1    A request for discovery is substantially justified "if reasonable
2    people could differ as to the appropriateness of the contested action."
3    Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d
4    490 (1988) (internal quotation marks and brackets omitted).  The trial
5    court has broad discretion to evaluate the justification proffered.
6    Reiner v. Warren Resort Hotels, Inc., 2008 WL 5120682 at *9 (D. Mont.
7    Oct. 1, 2008).

8
9    **B.**   **Fun Creation's Ex Parte Application To Quash Lacked Substantial**
10        **Justification**

11
12    Defendants' Ex Parte Application to quash the Fun Creation
13    deposition subpoena lacked substantial justification.  The only reason
14    Defendants moved ex parte late on the Friday evening before the Monday
15    morning deposition was because Fun Creation created an urgent crisis by
16    fighting a legitimate deposition.  Defendants and Fun Creation knew that
17    Plaintiffs were seeking discovery from Fun Creation employees in
18    September 2011 and knew at the very latest by November 9 and 10, 2011
19    that Plaintiffs were seeking to depose Fun Creation through their
20    attempts at service at Fun Creation's facilities.  As soon as Defendants
21    knew that Plaintiffs intended to depose Fun Creation, which undisputedly
22    had relevant information, Defendants and Fun Creation should have
23    coordinated with Plaintiffs to schedule the deposition.  Defendants
24    needlessly ran up costs challenging service based on technical --
25    sometimes hypertechnical - purported defects.  The fact that a client
26    or a "third party" under the client's control "fears" discovery (as
27    asserted by Defendants' counsel at the OSC hearing) is not substantial
28    justification for a motion to quash.

1    Fun Creation is responsible for thwarting the attempts to serve the

2    subpoena domestically, which led to the anomalous situation in which

3    Plaintiffs were forced to serve an American corporation abroad.    Fun

4    Creation's agent for service of process was not at the address listed

5    with the Secretary of State.    Blocked in their initial attempts to serve

6    the agent for service of process, Plaintiffs were justified in foregoing

7    further attempts to serve Fun Creation through its listed agent.    When

8    Plaintiffs thereupon tried to serve the business, Fun Creation had a

9    "low level" employee take the document, then protested service because

10   the person accepting the document was not an officer or a managing or

11   general    agent    of    the    company.[6]    This    conduct    strikes    of    pure

12   gamesmanship and does not provide substantial justification for a motion

13   to quash.

14

15    Defendants' primary argument in the <u>Ex Parte</u> Application, that

16   Plaintiffs should have obtained a Court order prior to serving the

17   subpoena in Hong Kong, is without basis in law or logic.    The law

18

19    [6] The Court notes that in some circumstances, the Ninth Circuit has
     found service effective on a corporation even when it is made upon an
20   individual who is not an officer or managing or general agent of the
     company. "Despite the language of [Federal Rule of Civil Procedure
21   4(d)(3)], service of process is not limited solely to officially
     designated officers, managing agents, or agents appointed by law for the
22   receipt of process.    The rules are to be applied in a manner that will
     best effectuate their purpose of giving the defendant adequate
23   notice. . . . Generally, service is sufficient when made upon an
     individual who stands in such a position as to render it fair,
24   reasonable and just to imply the authority on his part to receive
     service." <u>Direct Mail Specialists, Inc. v. Eclat Computerized</u>
25   <u>Technologies, Inc.</u>, 840 F.2d 685, 688 (9th Cir. 1988) (service of
     process on receptionist effective where employee was well integrated
26   into the organization and the correct person received actual notice).
     Thus, the November 9, 2011 service on Mr. Mai may have been effective
27   even though he is a "low level" employee.    There is no question that Fun
     Creation received actual notice of the subpoenas.
28

1  governing service of a subpoena on a California corporation is not

2  unclear:  service on the president (as an officer or managing agent) of

3  a corporation is good service.  Fed. R. Civ. P. 4(h)(1).  The provision

4  in 28 U.S.C. § 1783 requiring a court to find that a deposition is "in

5  the interest of justice" before a subpoena may be served on a United

6  States national residing in a foreign country makes no sense when

7  applied to an American corporation because an American corporation,

8  unlike an American expatriate living abroad, is not subject to an undue

9  burden by being required to appear at a deposition in the district where

10 the corporation is located.  Furthermore, demanding that a court

11 intervene prior to service of an American corporation to make a finding

12 that would be completely unnecessary if the same corporation had

13 accepted service domestically would be wasteful of the court's time.

14 Because the law authorizing service of an American corporation through

15 its president is unambiguous, Defendants should not have filed the

16 motion to quash.

17

18    The lack of substantial justification for the Ex Parte Application

19 is particularly evident here, where Defendants' only argument that

20 otherwise good service on Fun Creation's president was invalid was

21 because he was served during his deposition in Hong Kong.  As stated

22 above, the reason Mr. Thai was deposed in Hong Kong and not Los Angeles

23 was because Defendants' demanded that Mr. Thai's deposition proceed in

24 Hong Kong.  That Defendants would even consider exploiting the location

25 of the deposition, a fact of Defendants' own making, as a basis for

26 challenging service of the subpoena supports an inference of improper

27 gamesmanship, especially after Fun Creation evaded service at its

28 facilities in California.

1    Such an inference is further warranted by the fact that Defendants

2   filed their ninety-two page Ex Parte Application at 8:51 p.m. on the

3   Friday before the deposition, which was noticed for the following Monday

4   morning.  The timing of the filing clearly undercuts any suggestion that

5   the motion to quash was substantially justified.

6

7    Finally, Defendants' argument that sanctions should not be imposed

8   because Fun Creation voluntarily agreed to appear for deposition in a

9   hearing before Judge Kronstadt the day before the OSC issued is

10  unavailing.  The stipulation before Judge Kronstadt shows how easy it

11  would have been for Fun Creation to agree to the deposition without

12  applying ex parte for relief on strained, hypertechnical grounds that

13  served only to prolong discovery, needlessly increase the cost of

14  litigation, and unnecessarily burden the Court with a meritless motion.

15

16    In sum, any problem relating to service of the subpoena was a

17  problem created and furthered by Fun Creation and Defendants.  The

18  Motion to Quash was poorly conceived and lacked substantial

19  justification.  Consequently, sanctions against Fun Creation and

20  Defendants are warranted.

21

22  C.  **Plaintiffs Are Entitled To Reasonable Fees And Costs Associated**

23     **With The Fun Creation Deposition Subpoena**

24

25     1.  **The Lodestar Approach for Calculating Fee Awards**

26

27    In Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed.

28  2d 40 (1983), the Supreme Court adopted the lodestar approach for

1 calculating attorney fee awards.  A court determines the lodestar by

2 multiplying the number of hours reasonably expended on the litigation

3 or particular motion by a reasonable hourly rate.  Id. at 433

4

5 **2.  Determination of the Reasonable Hourly Rate**

6

7     To determine the reasonable hourly rate of the prevailing attorney,

8 the Court looks to the "rate prevailing in the community for similar

9 work performed by attorneys of comparable skill, experience, and

10 reputation." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th

11 Cir. 2008); see also Jordan v. Multnomah County, 815 F.2d 1258, 1262

12 (9th Cir. 1987) ("The prevailing market rate in the community is

13 indicative of a reasonable hourly rate.").

14

15     The party requesting attorneys' fees must submit "satisfactory

16 evidence . . . that the requested rates are in line with those

17 prevailing in the community . . . ." Blum v. Stenson, 465 U.S. 886,

18 895-96 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).  Declarations

19 regarding the prevailing rate in the relevant community are sufficient

20 to establish a reasonable hourly rate.  See Widrig v. Apfel, 140 F.3d

21 1207, 1209 (9th Cir. 1998).  "When a fee applicant fails to meet its

22 burden of establishing the reasonableness of the requested rates,

23 however, the court may exercise its discretion to determine reasonable

24 hourly rates based on its experience and knowledge of prevailing rates

25 in the community." Bademyan v. Receivable Mgmt. Servs. Corp., 2009 WL

26 605789 at *5 (C.D. Cal. Mar. 9, 2009); see also Moreno v. Empire City

27 Subway Co., 2008 WL 793605 at *7 (S.D. N.Y. Mar. 26, 2008) (where fee

28 applicant "has submitted no evidence of the prevailing market rate for

1  attorneys of like skill . . . it is within [the court's] discretion to
2  determine the reasonable hourly rate . . . based on [the court's]
3  familiarity with . . . prevailing rates [in the relevant community]").
4  Courts may also "find hourly rates reasonable based on evidence of other
5  courts approving similar rates . . . ." Parkinson v. Hyundai Motor
6  America, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). "If services of
7  a similar quality were available in the market where the services were
8  rendered for a reduced amount, the court may decrease the requested fees
9  accordingly." Illiana Surgery and Medical Ctr. LLC v. Hartford Fire
10 Ins. Co., 2011 WL 6056603 at *2 (N.D. Ind. Dec. 6, 2011).

11

12 **3.   The Number Of Hours Plaintiffs Spent Are Reasonable And Supported**
13 **By Evidence**

14

15     Robert M. Collins, counsel for Plaintiffs, spent or anticipated
16 spending the following time in connection with these proceedings:

17

18 1.   0.30 hours:  preparing notice of deposition and notifying counsel
19      of service of the subpoena on Mr. Thai in Hong Kong
20 2.   2.10 hours:  reviewing Defendants' Ex Parte Application to Quash;
21 3.   2.30 hours:  researching law re service of process in Hong Kong
22      under the Hague Convention in connection with Opposition to Ex
23      Parte Application
24 4.   3.00 hours:   drafting Plaintiffs' Opposition to Ex Parte
25      Application
26 5.   0.60 hours:  conferring with process server re invoices
27 6.   3.6 hours:  reviewing Court's Order denying Ex Parte and preparing
28      Plaintiffs' Fee Application and accompanying declarations

7.  1.00 hour:  anticipated time reviewing Defendants' January 3, 2012 response to Order to Show Cause

8.  1.00 hour:  anticipated time reviewing Defendants' January 6, 2012 supplemental filing re Plaintiffs' Application for Attorneys' Fees and Costs

9.  3.00 hours:  anticipated time preparing for and attending hearing on Order to Show Cause

(Collins Supp. Fee Decl., ¶¶ 4-11).  Plaintiffs invoices substantiate the hours.  (See id., Exh. A, at 1-4).  The Court concludes that the number of hours Mr. Collins spent on matters related to service of the subpoena, opposing the Ex Parte Application, and preparing and arguing the Fee Application reflect a reasonable number of hours.[7]  Consequently, the Court will award fees for 16.9 hours of Mr. Collins' billable time, adjusted for a reasonable hourly rate.

\\

\\

\\

\\

_____

[7] Defendants assert that Plaintiffs' contention that they will spend three hours preparing for and attending the hearing on the Order to Show Cause is unwarranted because "the Court indicates in its September 29, 2011 [sic] Order (document 231)" that the Court will take the matter under submission.  (Haney Fee Decl., ¶ 9).  Defendants appear to be confusing the Court's December 20, 2011 Order to Show Cause (Dkt. No. 213), for which Plaintiffs submitted the instant Application for Attorneys' Fees and Costs in anticipation of the January 9, 2012 hearing, with the separate December 29, 2011 Order Granting Plaintiffs' Motion for Reconsideration and Request for Sanctions, for which the Court will take briefings as to the amount of the sanctions to be awarded under submission.  (Dkt. No. 231).

**4.   The Hourly Rate Requested Is Not Reasonable So The Lodestar Must Be Adjusted**

In a motion for attorneys' fees, the hourly rate must be the prevailing market rate for the individual who performed and billed for the work.  See Widrig, 140 F.3d at 1209-10.  Mr. Collins, who performed all of the work at issue, was admitted to the Bar in January 2008. Plaintiffs have not submitted any evidence establishing the prevailing rate for attorneys of Mr. Collins' experience in the Los Angeles market. Mr. Collins' assertion that his firm's "blended rate" is $385.00 per hour for his work is insufficient to establish a reasonable rate for his services because a "blended rate" necessarily incorporates higher rates that otherwise would have been charged by more experienced attorneys. The Court finds no evidence to suggest that more experienced attorneys played any role representing Plaintiffs in these proceedings. Consequently, a "blended" rate is inappropriate here.

Defendants argue that a reasonable rate for Mr. Collins is $200.00 per hour.  (Haney Fee Decl., ¶ 7).  The Court agrees that $200.00 is a reasonable hourly rate for an attorney of Mr. Collins' experience.  That rate is also consistent with findings in other recent Central District cases.  See, e.g., MV Transp., Inc. v. Amalgamated Transit Union, Local 1756, 2011 WL 488869 at *3 (C.D. Cal. Feb. 2, 2011) ($225.00 hourly rate reasonable for attorney admitted to the Bar in 2006); Cheske v. Waring, 2011 WL 672536 at *2 (C.D. Cal. Feb. 15, 2011) ($250.00 hourly rate reasonable for attorney admitted to the Bar in 1990); McClenning v. NCO Financial Sys., Inc., 2011 WL 1375161 at *3 (C.D. Cal. Apr. 11, 2011) ($285.00 hourly rate reasonable for attorney admitted to the Bar in

1  2004).   The Court also finds that Plaintiffs' request for $413.68 for

2  costs of attempted service on Fun Creation's agent for service of

3  process  and  at  Fun  Creation's  California  facilities,  which  were

4  substantiated by invoices submitted with Plaintiffs' Opposition to the

5  Ex Parte Application, are reasonable. (See Collins Ex Parte Decl., Exh.

6  H, at 1-2).  Therefore, the lodestar is adjusted as follows:

7

8  16.9 hours x $200.00 = $3,380.00

9  Costs of service     =    413.68

10 Total Award          = $3,793.68

11

12                                **V.**

13                          **CONCLUSION**

14

15     Plaintiffs' Application for Attorneys' Fees and Costs is GRANTED in

16 part and DENIED in part.  Plaintiffs' Request for Sanctions is GRANTED.

17 However, the Court reduces the award of sanctions to $3,793.68.   The

18 $3,793.68 sanction is imposed jointly and severally against National

19 Products and Fun Creation only, and not against counsel.   National

20 Products and Fun Creation are ORDERED to pay sanctions in that amount to

21 Plaintiff MGA Entertainment within seven (7) days of the date of this

22 Order.

23

24     IT IS SO ORDERED.

25

26 DATED:  January 19, 2012

27                          _____
                                    /S/
                            SUZANNE H. SEGAL
28                          UNITED STATES MAGISTRATE JUDGE

                                    28