**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation; THE LITTLE TIKES COMPANY, INC., an Ohio corporation,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PRODUCTS LTD., a Hong Kong corporation; PLAYMIND LTD., a Hong Kong corporation; THE PLAYMIND GROUP, a Hong Kong corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. CV 10-07083 JAK (SSx)<br><br>**MEMORANDUM AND ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF "NON-PRIVILEGED" DOCUMENTS LISTED ON DEFENDANTS' PRIVILEGE LOG (Dkt. No. 432)** |

**I.**

**INTRODUCTION**

On July 2, 2012, Plaintiffs filed an <u>Ex Parte</u> Application for Leave to File a Motion to Compel Non-Privileged Documents on Defendants' Privilege Log. (Dkt. No. 432). On July 5, 2012, Defendants filed an Opposition to the <u>Ex Parte</u> Application. (Dkt. No. 439). On July 6, 2012, Plaintiffs filed a Reply. (Dkt. No. 440). On July 10, 2012, the

District Judge granted Plaintiffs' Ex Parte Application and referred the Motion to Compel to the Magistrate Judge. (Dkt. No. 441). On July 12, 2012, the Court held a telephonic conference during which the Parties agreed to meet and confer in an attempt to resolve their disputes relating to the Motion to Compel. On July 13, 2012, the Parties notified the Court that the Parties had resolved their disputes with one exception relating to certain documents withheld by Defendants on the ground of attorney-client privilege. (Dkt. Nos. 444-45). On July 16, 2012, the Court granted Plaintiffs' Motion in part consistent with the Parties' agreement and ordered further briefing on the remaining dispute. (Dkt. No. 447). On July 20, 2012, Defendants filed an Opposition to the Motion to Compel, including the Declarations of Wendy Wong and Gregg Adelsheimer, and lodged copies of the contested documents with the Court for in camera review. (Dkt. No. 448-49). On July 24, 2012, Plaintiffs filed a Reply in support of the Motion, including the Declaration of Craig Holden.[1] (Dkt. No. 451). The Court took the matter under submission without a hearing.

---

[1] Plaintiffs attached as Exhibit B to the Holden Declaration an email previously produced by Defendants that was not at issue in the original Motion but which Plaintiffs contend supports a finding that Defendants had proffered dishonest testimony. (Reply at 5; id., Exh. B). On July 25, 2012, Plaintiffs filed a "Supplemental Brief" regarding a dispute that had arisen between the Parties concerning Exhibit B. (Dkt. No. 454). On July 26, 2012, Defendants filed an Ex Parte Application for an Order Sealing and Compelling the Return of Exhibit B, (Dkt. No. 455), and Objections to the Holden Declaration. (Dkt. No. 456). Also on July 26, 2012, Plaintiffs filed an Opposition to the Ex Parte Application. (Dkt. No. 457). Defendants filed a document entitled "Defendants' Objection and Response to Supplemental Brief and Declaration of Craig Holden" on July 27, 2012. (Dkt. No. 459). On July 28, 2012, Defendants filed a copy of Exhibit 9, which was inadvertently omitted from Docket No. 459. (Dkt. No. 460). The Court will address the Parties' dispute concerning Exhibit B in a separate Order.

Plaintiffs contend that Defendants improperly withheld five emails from production on the basis of attorney-client privilege, even though Defendants' Privilege Log did not reflect the direct participation of an attorney in the communications. (Reply at 1-2). Defendants argue that the attorney-client privilege extends to communications between non-attorneys where, as here, they involve parties who share a common attorney and a common interest, the purpose of the communications is to assist legal counsel in preparing a defense, and the communications were intended to be kept confidential. (Opp. at 1). For the reasons stated below, Plaintiff's Motion to Compel production of the five disputed emails withheld on Defendants' Privilege Log is DENIED.

## II.

## DISCUSSION

**A.   Summary of Applicable Law**

"Where there are federal question claims and pendent state law claims present," as here, (see Dkt. No. 41), "the federal law of privilege applies." Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005); see also Fed. R. Civ. P. 501. The Supreme Court has "recognized the attorney-client privilege under federal law[] as 'the oldest of the privileges for confidential communications known to the common law.'" United States v. Zolin, 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)). The attorney-client privilege encourages complete disclosure of information between attorney and client and furthers the interests of justice.

Upjohn, 449 U.S. at 389. Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from discovery. Id. at 396; United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).

The Ninth Circuit has recognized the following as elements of the attorney-client privilege:

(1) where legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such

(3) the communications relating to that purpose

(4) made in confidence

(5) by the client

(6) are at this instance permanently protected

(7) from disclosure by himself or by the legal adviser

(8) unless the protection is waived.

Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1492 (9th Cir. 1989) (internal citations omitted). The burden of establishing the elements of the privilege rests with the party asserting it. Richey, 632 F.3d at 566.

1    Where the client is a corporation, however, special problems arise
2 in applying the privilege. Admiral Ins. Co., 881 F.2d at 1492. As
3 fictitious entities, corporations can seek and receive legal advice and
4 communicate with counsel only through individuals empowered to act on
5 behalf of the corporation. See id., (citing Commodities Futures Trading
6 Assoc. v. Weintraub, 471 U.S. 343, 348, 105 S. Ct. 1986, 85 L. Ed. 2d
7 372 (1985)).
8
9    According to the Supreme Court, the privilege applies to
10 communications by any corporate employee regardless of position when the
11 communications concern matters within the scope of the employee's
12 corporate duties and the employee is aware that the information is being
13 furnished to enable the attorney to provide legal advice to the
14 corporation. Upjohn, 449 U.S. at 394; Admiral Ins. Co., 881 F.2d at
15 1492. Although an expansive application of the attorney-client
16 privilege to corporations may impose severe burdens on discovery and
17 create a broad "zone of silence" over corporate affairs, see Upjohn, 449
18 U.S. at 395, effective representation by counsel "depends upon the
19 lawyer being fully informed by the client." Id. at 389; see also
20 Admiral Ins. Co., 881 F.2d at 1492 ("Upjohn stands for the proposition
21 that the advantages of preserving the privilege outweigh the inescapable
22 disadvantages of the resultant secrecy."). Whether the privilege
23 applies to particular statements is a mixed question of fact and law.
24 Richey, 632 F.3d at 563. Each case must be evaluated to determine
25 whether application of the privilege would further its underlying
26 purpose. Upjohn, 449 U.S. at 396-97.
27
28

It is well-recognized that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. The privilege therefore includes communications involving corporate officers and agents who possess the information requested by the attorney or who will act on the legal advice. Id. Several courts have held that communications between non-attorneys within a corporation for the purpose of obtaining or relaying legal advice are protected by the attorney client privilege. See, e.g., Williams v. Sprint/United Management Co., 238 F.R.D. 633, 640 (D. Kan. 2006) (communications exclusively between HR personnel were made for the purpose of obtaining legal advice and were therefore privileged); SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005) (protecting communications between client and consultant where consultant "possesses 'a commonality of interest with the client.'"); Santrade, Ltd. v. General Elec. Co., 150 F.R.D. 539, 545 (E.D. N.C. 1993). As the Santrade court explained:

> A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, in instances where the client is a corporation, documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. Second, documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the

6

     corporation may be properly informed of legal advice and act appropriately.

Id. (internal citations omitted). Corporate counsel does not need to represent the corporation's employees in their individual capacity for the privilege to apply. See, e.g., MacKenzie-Childs LLC v. MacKenzie-Childs, 262 F.R.D. 241, 249-50 (W.D. N.Y. 2009) (where corporate employees consult with corporate counsel, privilege generally belongs to the corporation); Coleman v. City of New York, 1999 WL 493388 at *2-3 (S.D. N.Y. 1999) (defense counsel's communications with City employees in action against City are protected from discovery pursuant to City's attorney-client privilege whether or not employees asked counsel to represent them individually).

    The so-called "common defense" or "joint defense" doctrine is an extension of the attorney-client privilege and applies only where the other conditions of the attorney-client privilege are met. Griffith v. Davis, 161 F.R.D. 687, 691 (C.D. Cal. 1995). The common defense doctrine may be at issue "where parties are represented by separate counsel but engage in a common legal enterprise." Id. at 692. It does not require a written joint defense agreement, but may be "created (and ended) by conduct as well as express agreement." United States v. Gonzalez, 669 F.3d 974, 981 (9th Cir. 2012). Application of the doctrine "prevents waiver of the [attorney-client] privilege to the extent confidential communications are shared between members of a joint defense" by allowing "parties and counsel involved in that defense to disclose privileged information to each other without destroying the privileged nature of those communications." Id. at 692. Where a

"'joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel,' communications may be deemed privileged whether litigation has been commenced against both parties or not." Id. (quoting United States v. Schwimmer, 892 F.2d 237, 244 (2nd Cir. 1989)).

Similarly, under the "common interest" or "joint client" doctrine, which applies where two clients share the same lawyer, "two parties who share a common legal interest may share legal advice with counsel concerning their mutual interest without effecting a waiver." MacKenzie-Childs, 262 F.R.D. at 249. The doctrine is grounded in "[t]he need to protect the free flow of information from client to attorney . . . whenever multiple clients share a common interest about a legal matter." Schwimmer, 892 F.2d at 243-44. Such "communications among joint clients and their counsel are not privileged in disputes between the joint clients, but are protected from disclosure to others." Griffith, 161 F.R.D. at 693. Like the common defense doctrine, "the joint client doctrine does not create an independent privilege, but depends upon a proper showing of the other elements of the attorney-client privilege." Id. It has typically been applied "to overcome what would otherwise have constituted a waiver of confidentiality because a communication had been shared between two clients." Id. The common interest doctrine may apply even when litigation has not commenced at the time of the communication. Gonzalez, 669 F.3d at 978.

**B.    The Withheld Documents**

   Five documents, which have been subjected to <u>in camera</u> reivew, are at issue in the instant dispute:  (1) an email dated December 14, 2011 from Wendy Wong to Gregg Adelsheimer, involving the communication of legal advice through Wong and the forwarding of a document; (Doc. #1); (2) an email dated December 2, 2011 from Wong to Adelsheimer, with a copy to Jillian Lam, in which Wong communicates a question from counsel; (Doc. #2); (3) several copies of an email chain dated September 20-22, 2011 between Wong and Adelsheimer, with copies to Lam, Vincent Thai, and Talion Ho, in which Adelsheimer and Wong discuss the litigation and mention seeking advice from counsel.  (Doc. Nos. #3-5).

**C.    The Documents Are Protected By The Attorney-Client Privilege**

   The attorney-client privilege clearly protects the contested communications from disclosure.  Wong is the General Manager of Fun Creation, which serves as the Service and Fulfillment Center for National Products.  (Wong Decl. at 1).  Adelsheimer is an independent contractor who serves as the National Sales Director for National Products and Fun Creation.  (Adelsheimer Decl. at 1).  To the extent that Wong and Adelsheimer may be considered the "functional equivalent" of employees of National Products, National Products' assertion of the attorney-client privilege is sufficient to protect these communications from discovery. Although National Products' counsel was not personally involved in the communications, each of the emails either explicitly conveyed a message from counsel by a corporate employee to another employee/agent in furtherance of the defense of this case, or was a

request from an employee/agent to another corporate employee to forward a question to counsel, also in furtherance of the defense. It is well accepted that "[i]n the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys." SmithKline Beecham Corp., 232 F.R.D. at 477. Moreover, "documents subject to the privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately." Santrade, 150 F.R.D. at 545. In these emails, Wong served as the conduit through which messages between counsel and National Products employees were conveyed. The emails explicitly referred to counsel, were sent in furtherance of the defense of this action, and appear to have been made in confidence. Consequently, National Products' assertion of the attorney-client privilege protects these communications from disclosure.[2]

---

[2] It appears from the Opposition and the attached declarations that Wong and/or Adelsheimer may be claiming that they are the "functional equivalent" of National Products employees and that National Products' counsel is representing them in their individual capacities as well as representing Defendant National Products. To the extent that Wong and Adelsheimer are in fact making both claims, they must establish that: "(1) [they] approached the attorneys for the purpose of seeking legal advice; (2) when [they] did so, [they] made it clear to the attorneys that [they were] seeking legal advice in [their] individual rather than in [their] representative capacity; (3) the attorneys saw fit to represent [them] personally, knowing a conflict could arise; (4) [their] conversations with the attorneys were in confidence; and (5) 'the substance of [their] conversations with [the attorneys] did not concern matters within [the company] or the general affairs of [the company].'" United States v. Graf, 610 F.3d 1148, 1160-61 (9th Cir. 2010) (quoting In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 123 (3d Cir. 1986)). Wong and Adelsheimer have not made this showing, but as explained below, it is unnecessary to resolve this question. If Wong and Adelsheimer are the functional equivalent of employees, National Products' assertion of the attorney-client privilege suffices. If they are not "employees," application of the joint defense/joint client

To the extent that Wong and Adelsheimer may not properly be considered the "functional equivalent" of National Products employees, the communications would still be protected under the joint defense or joint client doctrine. Even though Wong, either individually or on behalf of Fun Creation, and Adlesheimer, as an independent consultant, are not named as defendants in this action, they each assert that they are represented by the same counsel representing National Products and that the disputed emails were circulated in confidence "in furtherance of [their] joint counsel's professional legal advice" in this litigation. (Wong Decl. at 1; Adelsheimer Decl. at 1). Indeed, Defendant's counsel represented both Wong and Adelsheimer at their respective depositions. Wong and Adelsheimer also share a common interest in this litigation, which is aligned with Defendant's interest. "Communications shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship." Metro Wastewater Reclamation v. Continental Cas., 142 F.R.D. 471, 476 (D. Colo. 1992). These emails, written by individuals interested in a joint defense and written for the purpose of assisting legal counsel, are privileged.

Finally, the Court notes that in addition to being protected from disclosure by the attorney-client privilege, the five emails do not contain any information which the Court would consider relevant to the claims or defenses in this action. Rule 26(b)(1) does not require the production of irrelevant documents. Consequently, Plaintiffs' Motion

---

doctrine protects the emails from disclosure.

to Compel production is DENIED to the extent it seeks production of these emails.

**D. Plaintiffs' Request For Sanctions Is Denied**

Plaintiffs request sanctions.[3] (Reply at 2). Although the Court earlier granted Plaintiffs' Motion in part with respect to the requests pertaining to documents withheld on "privacy" and "trade secret" grounds, it is denying the Motion with respect to documents withheld on "attorney-client privilege" grounds. As limited to the instant attorney-client privilege dispute, the Court finds that Plaintiffs were substantially justified in bringing the Motion and that Defendants were substantially justified in opposing the Motion. Therefore, the Court exercises its discretion pursuant to Federal Rule of Civil Procedure 37(a)(5)(C) and DENIES the request for sanctions.

\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[3] Defendants do not appear to request sanctions in connection with Plaintiffs' filing of the instant Motion to Compel, but do request sanctions with respect to the dispute over Exhibit B to the Holden Declaration that was filed with Plaintiffs' Reply. (Dkt. 455 at 1). The Court will address the requests for sanctions related to the Exhibit B dispute in a separate order.

## III.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Compel production of the five documents at issue that were withheld on the ground of "attorney-client privilege" is DENIED.

IT IS SO ORDERED.

DATED: August 2, 2012

```
                              /S/
                        SUZANNE H. SEGAL
                        UNITED STATES MAGISTRATE JUDGE
```