# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., a California corporation; THE LITTLE TIKES COMPANY, INC., an Ohio corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL PRODUCTS LTD., a Hong Kong corporation; PLAYMIND LTD., a Hong Kong corporation; THE PLAYMIND GROUP, a Hong Kong corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | No. CV 10-07083 JAK (SSx)<br><br>**MEMORANDUM AND ORDER DENYING DEFENDANTS' <u>EX PARTE</u> APPLICATION FOR PROTECTIVE ORDER SEALING AND COMPELLING RETURN OF EXHIBIT B TO DECLARATION OF CRAIG HOLDEN**<br><br>**(Dkt. No. 455)** |

**I.**

**INTRODUCTION**

On July 24, 2012, Plaintiffs filed a Reply in support of their then-pending Motion to Compel Production of "Non-Privileged" Documents on Defendants' Privilege Log, (Dkt. No. 432), including the Declaration

of Craig Holden.[1] ("1Holden Decl.," Dkt. No. 451). Exhibit B to the Holden Declaration was a previously produced email that was not at issue in Plaintiffs' underlying Motion to Compel but which Plaintiffs contended supported a finding that Defendants had proffered false or misleading testimony. (Id. at 5).

On July 25, 2012, Plaintiffs filed a "Supplemental Brief" regarding a dispute that had arisen between the Parties concerning Exhibit B. (Dkt. No. 454). On July 26, 2012, Defendants filed an Ex Parte Application for an Order Sealing and Compelling the Return of Exhibit B, ("Ds. Appl.," Dkt. No. 455), including the Declarations of Jillian Lam, Gregg Adelsheimer, Steven H. Haney, Paul Eisner, and Darren T. McBratney. (Id.). On the same date, Defendants filed Objections to the Holden Declaration. (Dkt. No. 456). Also on July 26, 2012, Plaintiffs filed an Opposition to Defendants' Ex Parte Application. ("Pls. Opp.," Dkt. No. 457), including the Declaration of Craig E. Holden. ("2Holden Decl.," id.). On July 27, 2012, Defendants filed a document entitled "Defendants' Objection and Response to Supplemental Brief and Declaration of Craig Holden in Support of Allegedly Non-Privileged Documents and in Response to Opposition to [Defendants'] Ex Parte Application and Declaration of Craig E. Holden," ("Ds. Resp.," Dkt. No. 459), including the Declarations of Steven H. Haney, Paul Eisner, and Darren T. McBratney. (Id.). On July 28, 2012, Defendants filed a copy of Exhibit 9, which had inadvertently been omitted from their Response

---

[1] The Court granted in part and denied in part the underlying Motion to Compel in Orders issued on July 16, 2012 and August 2, 2012, filed concurrently with this Order. (Dkt. No. 447).

2

in the previous day's filing. (Dkt. No. 460). The Court took the matter under submission without a hearing.

Exhibit B is an email that Jillian Lam sent to Gregg Adelsheimer on December 14, 2011, the day before Adelsheimer's deposition.[2] (1Holden Decl., Exh. B; Ds. Appl. at 2). Adelsheimer produced a copy of the email at his deposition and was questioned about its contents without objection by Defendants' counsel. (Ds. Resp. at 4; Pls. Opp. at 6). Plaintiffs included a copy of the email in a motion for reconsideration filed with the Court on December 16, 2011, the day after Adelsheimer's deposition. (Dkt. No. 205-2, Exh. B). On December 20, 2011, Defendants objected to the filing of the email on the grounds of "irrelevant, immaterial, hearsay, lack of foundation and lack of authentication," but did not object on attorney-client privilege grounds. (Dkt. No. 211). The Court denied Defendants' evidentiary objections on December 29, 2011. (Dkt. No. 231 at 24-25).

Four months later, on Friday, April 27, 2012, Defendants wrote to Plaintiffs claiming for the first time that the email was a privileged attorney-client communication. (Ds. Resp., Exh. 5). Defendants demanded the return or destruction of all copies of the email pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), which among other things sets forth the procedure for "clawing back" privileged documents and prohibits the receiving party from using or disclosing information

---

[2] Lam is a manager for Defendant National Products. (Lam Decl. ¶ 3). Gregg Adelsheimer is an independent contractor who serves as the National Sales Director for National Products, whom Defendants represent is the "functional equivalent" of an employee. (Adelsheimer Decl. ¶ 2; see also Dkt. No. 448 at 1).

3

subject to a claim of privilege until the claim is resolved. (Id.; see also Fed. R. Civ. P. 26(b)(5)(B)). On Tuesday, May 1, 2012, Defendants sent a follow up letter repeating their contentions and demanding a response by 5:00 p.m. the same day. (Id., Exh. 6). Plaintiffs responded via email that day, indicating their availability to meet and confer and requesting that Defendants provide legal authority to support their claim of privilege. (2Holden Decl., Exh. C). It does not appear from the record that either party continued this particular discussion regarding Defendants' assertion of privilege until July 25, 2012, when Plaintiffs filed Exhibit B with their Reply in support of their Motion to Compel.

In their Ex Parte Application, Defendants contend that the email is protected from disclosure pursuant to the attorney-client privilege and that its "inadvertent" production at Adelsheimer's deposition did not waive the privilege. (Ds. Appl. at 1). Defendants seek an order sealing Exhibit B and requiring Plaintiffs to return or destroy all copies of Exhibit B. (Id. at 5-6, 10-11). Defendants also seek sanctions for Plaintiffs' use and public filing of the email after Plaintiffs had been notified of Defendants' privilege assertion. (Id. at 11). Plaintiffs argue that the email is not privileged because it was not addressed to an attorney. (Pls. Opp. at 5). Plaintiffs also claim that even if the email were privileged, its voluntary production at Adelsheimer's deposition, the extensive questioning about the email during the deposition without objection, and Defendants' delay in asserting a claim of privilege waived any privilege pertaining to the document. (Id. at 5-6). Like Defendants, Plaintiffs also request sanctions. (Id. at 7). For the reasons stated below, Defendants' Ex

4

Parte Application for Protective Order Sealing and Compelling the Return of Exhibit B is DENIED.  The parties' respective requests for sanctions are also DENIED.

**II.**

**DISCUSSION**

**A.   Summary of Applicable Law**

Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from discovery.[3]  Upjohn Co. v. United States, 449 U.S. 383, 396, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).  The attorney-client privilege exists where: "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."[4]  United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010).  It is well settled that "[v]oluntary disclosure of privileged communications constitutes waiver of the privilege . . . ."  Richey, 632 F.3d at 566; see also AHF Cmty.

---

[3] The federal law of privilege applies where, as here, there are federal question claims, even when pendent state law claims are present.  Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005); see also Fed. R. Civ. P. 501.

[4] The Court has set forth the law relevant to the application of the attorney-client privilege where the client is a corporation in its Order Denying in Part Plaintiffs' Motion to Compel, issued concurrently with this Order, and will not repeat it here.

5

Dev., LLC v. City of Dallas, 258 F.R.D. 143, 148 (N.D. Tex. 2009) ("Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation.").

Not all disclosures result in a waiver, however. An inadvertent disclosure of privileged information does not operate as a waiver if: "(1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took legal steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). Courts in the Ninth Circuit examine the totality of circumstances to determine whether disclosure of privileged information results in a waiver of applicable privileges. United States v. de la Jara, 973, F.2d 746, 749 (9th Cir. 1992); United States ex rel. Bagley v. TRW, Inc., 204 F.R.D. 170, 177 (C.D. Cal. 2001). Factors to be considered in determining whether the disclosure was inadvertent include: (1) the reasonableness of precautions used to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery; (d) the extent of the disclosures; and (5) the overriding issue of fairness. Id.; see also Fed. R. Evid. 502, Advisory Committee Note (b). The burden of proving inadvertent disclosure is on the party asserting the privilege. Callan v. Christian Audigier, Inc., 263 F.R.D. 564, 566 (C.D. Cal. 2009).

**B.   Even If Exhibit B Is Privileged, Defendants Have Waived the Privilege**

Defendants assert that Exhibit B is privileged because (1) Lam and Adelsheimer share a common interest and common attorney in this litigation; (2) Lam sent it to Adelsheimer in advance of his deposition to apprise him of her deposition testimony and discuss case strategy; and (3) Lam intended to copy Defendants' counsel on the email, but inadvertently omitted his name, and in fact "sent essentially the same email" to counsel "[a]pproximately two minutes later." (Ds. Resp. at 3-4). Plaintiffs contend that the email is not privileged because it was neither addressed to, nor received by, an attorney for the purposes of providing legal advice. (Pls. Opp. at 5). The Court need not resolve the privilege issue, however, because even assuming that the email was privileged, Defendants clearly waived the privilege.

Although Defendants assert that the production of the email at Adelsheimer's deposition was "inadvertent," they fail to point to facts that would support that assertion. (Ds. Resp. at 4). As one court explained,

> "[A]n inadvertent [disclosure] would occur when a document, which a party intended to maintain as confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision -- albeit an unwise

7

or even mistaken, decision -- not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence."

ePlus Inc. V. Lawson Software, Inc., 280 F.R.D. 247, 255 (E.D. Va. 2012) (quoting McGafferty's, Inc. v. Bank of Glen Burnie, 1998 U.S. Dist. LEXIS 12861 (D. Md. Jan. 26, 1998) (internal quotation marks omitted)).

Indeed, the record establishes that the production cannot be considered "inadvertent" under the five "totality of the circumstances" factors identified in Bagley. The first factor examines "the reasonableness of precautions used to prevent inadvertent disclosure." Bagley, 204 F.R.D. at 177. The production here took place in the presence of Defendants' counsel at Adelsheimer's deposition. Defendants do not describe any process that they undertook prior to the deposition to prevent the disclosure of privileged information, but simply state that "Adelsheimer produced numerous documents." (Ds. Resp. at 4). In his deposition, Mr. Adelsheimer stated that he met with counsel the night before his deposition over dinner and reviewed "a few documents." (Plaintiff's Reply, Exh. A, pp. 88, ll. 21-25, p. 89, ll. 1-5). This description does not convince the Court that reasonable precautions were taken to prevent the disclosure of privileged information. Defendants have not met their burden with respect to this factor.

The second factor considers "the time taken to rectify the error." Bagley, 204 F.R.D. at 177. This factor weighs heavily against Defendants' claim that the production was inadvertent. Defendants knew the document was produced on the day it was produced, December 15, 2011,

because Adelsheimer was questioned about it during his deposition with counsel present. (Pls. Opp. at 5-6). The document was made an exhibit to Adelsheimer's deposition transcript. (Id.). Nonetheless, counsel did not object at the deposition on the ground that the document was subject to the attorney-client privilege nor did counsel demand its return. "A client waives the attorney-client privilege by failing to assert it when confidential information is sought in legal proceedings." GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1272-73 (Fed. Cir. 2001); see also AHF Cmty. Dev. 258 F.R.D. at 149 (disclosure was voluntary where plaintiff's deposition questions and exhibits provided defendants with notice that privileged documents had been produced, and defendants did not object to their disclosure); Crossroads Sys. (Tex) v. Dot Hill Systems, 2006 WL 1544621 at *2 (W.D. Tex. 2006) (attorney's outright failure to recognize a viable privilege objection at deposition does not constitute "inadvertence").

More importantly, even if counsel could somehow be excused for failing to object at the deposition, Defendants did not assert the privilege in their written objections to Plaintiffs' motion for reconsideration filed after Adelsheimer's deposition, which presumably seasoned attorneys reviewed and approved. (Dkt. No. 211). Instead, Defendants waited more than four months after they knew that the document had been produced to inform Plaintiffs of their belief that the document was privileged, and more than seven months after Adelsheimer's deposition to bring the matter to the Court's attention. Defendants did not act promptly to rectify the disclosure. See Martin v. State Farm Mut. Auto. Ins. Co., 2011 WL 1297819 at *5 (S.D. W.Va. April 1, 2011) (defendant's failure to object to questioning about an allegedly

privileged letter used as an exhibit at deposition or to assert the privilege until five days after the deposition waived the privilege).

The third factor considers the scope of discovery. Bagley, 204 F.R.D. at 177. While Defendants contend that Adelsheimer produced "numerous" documents, they do not quantify the production. (Ds. Resp. at 4). Even if the production were voluminous, the scope of the production is irrelevant because Defendants knew that this particular email was produced on the very day it was produced, as Adelsheimer was questioned about this specific email during his deposition. This factor does not weigh in favor of Defendants.

The fourth factor considers the extent of the disclosures. Bagley, 204 F.R.D. at 177. The number and extent of Defendants' disclosures of privileged information appear to be minimal. Therefore, this factor weighs in favor of Plaintiffs.

Finally, the fifth factor, which considers "the overriding issue of fairness," also weighs heavily in favor of Plaintiffs. Bagley, 204 F.R.D. at 177. The contents of the email were revealed over seven months ago and were part of Adelsheimer's deposition. The email was also included in a motion filed by Plaintiffs shortly after Adelsheimer's deposition, to which Defendants filed written evidentiary objections on multiple grounds that did not include an assertion of the attorney-client privilege. (Dkt. No. 205, Exh. B). Instead, Plaintiffs waited for many months to assert the current privilege objection. Considering the totality of the circumstances, it is clear that even if the email was privileged, the privilege has been waived.

In light of the waiver, there is no basis for the Court to order that Exhibit B be sealed or to require Plaintiffs to destroy or return all copies of the email. Defendants' Ex Parte Application for Protective Order is therefore DENIED.

**C.  The Parties' Requests For Sanctions Are Denied**

Defendants and Plaintiffs seek sanctions in connection with the Ex Parte Application. (Ds. Appl. at 11; Ps. Opp. at 7). Federal Rule of Civil Procedure 37(a)(5)(B) provides that if a discovery motion is denied, the Court must, after giving an opportunity to be heard, require the moving party and/or the party's attorney to pay the reasonable expenses incurred in opposing the motion. However, the Court has discretion to deny sanctions when it is "convinced that the losing party was 'substantially justified' or 'other circumstances' exist making such an award 'unjust.'" Ceramic Corp. of America v. Inka Maritime Corp., Inc., 163 F.R.D. 584, 589 (C.D. Cal. 1995) (quoting Fed. R. Civ. P. 37(a)(5)(B)). Here, Defendants waived any privilege by failing to timely assert the privilege, and appear to have been derelict in pursuing their privilege claim even after first asserting it in late April 2012. Nevertheless, the Court appreciates that Defendants' obligations to their clients provided justification for their current effort to "claw back" the disclosed document. Accordingly, the Court finds substantial justification for each party's position and DENIES the requests for sanctions.

\\
\\
\\

# III.
# CONCLUSION

For the reasons stated above, Defendants' Ex Parte Application for Protective Order Sealing and Compelling the Return of Exhibit B is DENIED. The Parties' respective requests for sanctions are also DENIED.

IT IS SO ORDERED.

DATED: August 2, 2012

                              /S/
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE