Steven H. Haney, SBN 121980
**HANEY TORBETT LLP**
1055 West Seventh Street, Suite 1950
Los Angeles, California 90017
Telephone: (213) 228-6500
Facsimile: (213) 228-6501
e-mail: shaney@haneytorbett.com

Attorneys for Defendants
NATIONAL PRODUCTS, LTD.,
and PLAYMIND, LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGA ENTERTAINMENT, INC., A California corporation; THE LITTLE TIKES COMPANY, an Ohio Corporation,<br><br>Plaintiffs,<br><br>-vs-<br><br>NATIONAL PRODUCTS, LTD., a Hong Kong corporation; PLAYMIND, LTD., a Hong Kong Corporation; PLAYMIND GROUP, a Hong Kong Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: CV 10-7083 JAK (SHSx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE #6, PURPORTEDLY TO EXCLUDE TESTIMONY ATTEMPTING TO USURP THE TRIER OF FACT OR RELATING TO THE MATTERS WHICH ARE SUBJECT OF PLAINTIFFS' SUMMARY ADJUDICATION MOTION<br><br>TIME: 3:00 P.M.<br>DATE: September 10, 2012<br>PLACE: Courtroom 750<br><br>Complaint Filed: September 22, 2010<br>Joint Status Conference June 4, 2012<br>Discovery Cut off July 30, 2012<br>Motion Cut off July 30, 2012<br>Motion In Limine filing Aug. 6, 2012<br>FSC/ MIL Hearing September 10, 2012<br>Trial September 25, 2012 |

1

Opposition to Plaintiffs' Motion in Limine #6, Purportedly to Exclude Testimony Attempting to Usurp the Trier of Fact or Relating to the Matters Which Are Subject of Plaintiffs' Summary Adjudication Motion

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Defendants NATIONAL PRODUCTS, LTD., and PLAYMIND, LTD., request that Plaintiffs' motion in limine #6, purportedly to exclude testimony attempting to usurp the trier of fact or relating to the matters which are subject of Plaintiffs' summary adjudication motion be denied.

## II. STATEMENT OF FACTS

Antonio Sarabia II has provided expert opinions in his report, rebuttal report and supplemental report, copies of which are collectively attached as Exhibit "A" hereto. The documents are lodged as exhibits to Plaintiffs' motions in limine (ECF 493-2) pages 53-99, 101 and 103-123 and authenticated by the Declaration of Robert Collins (ECF 493-1).

## III. DISCUSSION

A. **EXPERT TESTIMONY IS ADMISSIBLE WHERE THE EXPERT IS QUALIFIED, THE TESTIMONY IT WILL ASSIST THE TRIER OF FACT TO UNDERSTAND EVIDENCE, AND THE TESTIMONY IS RELIABLE**

Rule 702. Federal Rules of Evidence, which sets forth the standard for allowance of expert testimony states:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

HANEY TORBETT LLP
1055 WEST SEVENTH STREET, SUITE 1090
LOS ANGELES, CALIFORNIA 90017
TELEPHONE: (213) 228-6500
FACSIMILE: (213) 228-6501

**B.   ANTONIO R. SARABIA II'S, EXPERT TESTIMONY IS ADMISSIBLE PURSUANT TO RULE 702, FEDERAL RULES OF CIVIL PROCEDURE, SINCE HE IS QUALIFIED, AND THE TESTIMONY IS RELIABLE AND WILL ASSIST THE TRIER OF FACT TO UNDERSTAND EVIDENCE**

1. *Antonio R. Sarabia II is Qualified and his testimony meets the requirements of Rule 702, Federal Rules of Evidence*

Antonio R. Sarabia II is qualified to provide expert testimony. As set forth in his resume, (ECF 493-2), pages 83-88, Mr. Sarabia has been an expert since 1994, for a period of approximately eighteen years, had previously practiced law, and has provided expert testimony in the past relating to the apparel industry, licensing and intellectual property, has published over twenty articles and has served on panel discussions. Additionally, Mr. Sarabia has testified as an expert witness in numerous cases. Plaintiffs do not contest Mr. Sarabia's expert qualifications.

2. *The Expert Testimony of Antonio R. Sarabia, II, Meets the Rule 702, Federal Rules of Civil Procedure Requirements, and Will Assist the Jury to Understand the Evidence and Determine the Facts in Issue*

The main opinions provided by Mr. Sarabia include:

   a. During the License and after its expiration, NATIONAL PRODUCTS had no duty to police the Internet for trademark infringements of the "Little Tikes" mark,

   b. Even though NATIONAL PRODUCTS had no duty to police the Internet for trademark infringements of the "Little Tikes" mark, it made efforts to do so,

   c. MGA ENTERTAINMENT was a large, prosperous licensor of the trademark "Little Tikes" on toys and it believed there were substantial third party infringements of the mark. Its failure to act directly against these infringers fell below the standard of care of a large, prosperous trademark owners in the consumer product business,

d. MGA ENTERTAINMENT's failure to have distributors sign the Distributor Authorization Agreement which would have given it additional power over the use of "Little Tikes" fell below the standard of care of licensors in the consumer product licensing business in similar circumstances,

e. MGA ENTERTAINMENT complained about use of "Little Tikes" by large retailers even though those retailers carry its flagship brand and help build brand strength - not harm it,

f. MGA ENTERTAINMENT's approval of the customer list attached to the Settlement meant that NATIONAL PRODUCTS was free to sell licensed products to any customers on the list during the sell-off period; this included products from canceled orders or products returned to it,

g. NATIONAL PRODUCTS followed normal licensee practices when the inventory it reported in the Settlement did not include sold licensed products,

I. Once TDI canceled its order, NATIONAL PRODUCTS was prudent to sell the goods to other customers,

k. In the context of a license this size, sales of several hundred dollars or even several thousand dollars, to a customer not on the approved customer list is not a material or substantial breach of the license, and

l. It is common for foreign consumer product companies like NATIONAL PRODUCTS to have an independently owned service center in the U.S. to fill small orders and to respond to consumer problems.

Each of the items listed above are items not within common knowledge of lay persons. Lay persons usually do not know who has the duty to police the internet, the standard of care regarding action against third party infringers, the standard of care regarding the failure to have distributors sign distributor license agreements, whether sales of Little Tikes® branded goods helps or hurts brand recognition, interpretation of the settlement agreement regarding resales of merchandise (previously sold for which an order was cancelled) to customers on the approved list, whether normal licensee practice requires reporting of products already sold, whether it was prudent to resell goods from a cancelled order, what

constitutes a material as compared to an immaterial breach of contract, and whether it is common practice for foreign companies to maintain American based service centers to handle small orders and deal with customer problems. This is why expert testimony is needed on these topics and Plaintiffs have presented neither facts nor law showing otherwise.

3. The Testimony Is Based on Sufficient Facts

As set forth in the expert report, Mr. Sarabia has relied on numerous legal authorities and documents supplied by the parties, both Plaintiffs and Defendant in this case. Mr. Sarabia has read the legal memoranda Plaintiffs do not question that Mr. Sarabia has sufficient facts.

4. Antonio R. Sarabia II's Testimony Is the Product of Reliable Principles and Methods

Mr. Sarabia's testimony will examine the principles, well known to individuals in the licensing business and applied them to the facts at hand. His report, and the matters to which he will testify is based on the application of those principles. Plaintiffs do not question Mr. Sarabia's application of legal principles or his methods.

5. Antonio R. Sarabia II, Reliably Applied Principles and Methods to the Facts of the Present Case

Mr. Sarabia will apply well known principles to the facts of this case. Based on his report, he applies the principles regarding enforcement of the mark, specifically the obligations of the owner of the mark to enforce the license and consequences of the failure to do so, resales of returned merchandise, to mitigate losses, how mass marketing helps improve brand recognition, the standard of care, what is a material as compared to an immaterial breach, and the practice of foreign

companies maintaining service centers, along with other issues to the facts of the present case. In short, Mr. Sarabia's report meets and his proffered testimony will meet the requirements of Rule 702, <u>Federal Rules of Civil Procedure</u>, for admissibility.

C. <u>PLAINTIFFS' COMPLAINTS ABOUT ANTONIO R. SARABIA, II'S TESTIMONY LACK MERIT</u>

At pages 3-4 of Plaintiffs' motion in limine Plaintiffs dispute Mr. Sarabia's opinion that: "National Products had no duty to police the Internet for trademark infringements" because it was only based on three pieces of evidence.

Plaintiffs' contention[1] is erroneous. Mr. Sarabia's analysis is also based on Mr. Sarabia's specialized industry experience, specifically (1) ***industry standards***, (2) multiple License provisions, (3) the understanding of the Licensee, and (3) the understanding of the Licensor, all of which were in accord. Pursuant to those criteria, MGA ENTERTAINMENT had the responsibility to act against third party infringers." (*See:* Sarabia Report, page11 (ECF 493-2), page 66) (***emphasis added***).

An expert should base their opinion on a combination of evidence and expertise. If what MGA really meant is that three pieces of evidence are not enough, even in combination with expertise, that position is mistaken under 9th Circuit case law:

> "'[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1017, fn. 14 (9th Cir. 2004)

Therefore the fact that Mr. Sarabia relies on three pieces of evidence is not a basis to exclude his testimony. Additionally, Mr. Sarabia's opinion the duty of a

---

[1] Plaintiffs' motion in limine #6, pages 3 and 4.

licensee with respect to a licensor's trademarks is not commonly known and is a suitable subject for an expert opinion.

Plaintiffs' claim[2] that: "Mr. Sarabia attempts to bootstrap his testimony by stating what the 'industry standard' is, but no evidence of such standard is cited by Mr. Sarabia other than" the License is also without merit.

As Mr. Sarabia stated in his report:

> "My analysis and opinions about trademark enforcement and protection are based upon my knowledge of the generally accepted standards in the trademark enforcement and protection business. I know these standards and that these standards are generally accepted in the trademark enforcement and protection business as a result of my extensive work with trademark owners and licensors during the last 25 years." (*See:* Sarabia Report, page 26 (ECF 493-2), page 81)

Mr. Sarabia offers evidence about how he learned that standard and that it exists. Plaintiffs' argument suggests that MGA believes that a business expert must have a scientific basis for an opinion. In other words, MGA seems to be asking for written or research support for an industry standard. As the Ninth Circuit has explained, this argument reflects a confusion between the two types of experts:

> "Concerning the reliability of non-scientific testimony such as Caliri's, the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017

> "Given that, unlike scientific or technical testimony, the reliability of Caliri's testimony was not contingent upon a particular methodology or technical framework, the district court did not abuse its discretion in finding Caliri's testimony reliable based on his knowledge and experience." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1018.

Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998 1017,[3] states that specialized experience may be a sufficient basis for a nonscientific expert opinion. Mr. Sarabia has specialized experience. (*See:* Sarabia Report pages 2 - 6.

---

[2]Plaintiffs' motion in limine #6, page 4.

[3]For some obscure reason, the Plaintiffs do not seem to like 9th circuit precedent

(ECF 493-2), pages 57-61) MGA does not question Mr. Sarabia's credentials or expertise.

Plaintiffs criticize[4] Mr. Sarabia's opinion that National Products had no duty to monitor third party infringements and it went beyond that duty in communicating with some third parties.

Plaintiffs' Motion in Limine mischaracterizes the opinion. The correct first part of Mr. Sarabia's opinion was that NATIONAL PRODUCTS had no duty to "police" third party infringements.(*See:* Sarabia Report, page 8 (ECF 493-2), page 63). An earlier portion of Plaintiffs' Motion correctly quoted from the same passage.[5] This section, then, is the second attack on the same opinion.

This portion of the Plaintiffs' motion in limine #6 is aimed at Sections 3 and 4 of the Sarabia Report, Section 3 (*See:* Sarabia report pages 8 - 12 (ECF 493-2) pages 63-67) contains significant discussion and explanation of licensing business standards on trademark protection and enforcement. This is an appropriate area for expert opinion. The Plaintiffs' motion in limine #6 argues that Mr. Sarabia should not be allowed to testify because the "jury may interpret the evidence itself."[6] That is a truism. But the jury will not be able to reach expert conclusions like this one:

Mr. Sarabia also opined that when there is a U.S.-based licensor and the territory includes the U.S., it is the predominant practice in the consumer product trademark licensing business for the licensor to retain the responsibility for acting against third party infringers of the trademark which is the subject of the license. (*See:* Sarabia Report, page 8 (ECF 493-2) pages 63). This is information the jury should have.

Plaintiffs also criticize these sections of the Sarabia Report as "parasitic on Sarabia's preceding argument about the existence of a duty, and should be

---

[4] Plaintiffs' motion in limine #6, page 4.
[5] Plaintiffs' motion in limine, page 3, lines 19 - 21.
[6] Plaintiffs' motion in limine, page 4, lines 15 - 16.

excluded for that reason alone."[7]

Plaintiffs criticize the opinion[8] that use of 'Little Tikes' mark by specified retailers could not have harmed the brand because another of Plaintiff's marks, "'Bratz" is sold by some of the same specified retailers. This part of Plaintiffs motion in limine focuses on section 7 (*See:* Sarabia Report, pages 16 - 17 (ECF293-2) pages 71-72) of the Sarabia Report. This section of the Report begins with an analysis of the interplay between brands and retail stores - an analysis which may not be known to the lay person. Plaintiffs' motion disregards this analysis and simply concludes that a jury should be able to make the same "inference."[9] In other words, even though Mr. Sarabia is an expert in this area, and he explains issues of brand development and retail stores, a jury might be able to figure it out so he should not testify! Not surprisingly there is no citation of authority for this novel approach to barring experts. It is precisely the role of experts to help jurors understand complex issues. Here is part of the section which the Motion seeks to exclude:

> ".... MGA Entertainment has a number of prominent and successful brands. Its flagship brand is the Bratz line. . . . MGA Entertainment, as a successful and prosperous brand owner, carefully targets where it wants its premier brand sold. The Bratz line is sold at a variety of retailers including Amazon.com, QVC, Target, Meijer.com, Overstock.com, Sears.com and ToysRUS. If sales of the flagship line at these stores helps the flagship line, how could use of the "Little Tikes" mark by these same stores hurt the lesser "Little Tikes" brand? Under MGA Entertainment's own retail outlet policy, it makes no sense to claim that the lesser brand is hurt by sales at the same retailers whose sales help the flagship brand." (*See:* Sarabia Report, page17 (ECF493-2) page 72)

This is not the type of "inference" which a juror can reach without an expert to guide him or her.

---

[7]Plaintiffs' motion in limine, page 4, lines 11 - 13.
[8]Plaintiffs' motion in limine, page 4, lines 22 - 28.
[9]Plaintiffs' motion in limine, page 4, lines 25 - 26.

Plaintiffs criticize[10] the Sarabia opinion that under licensing business standards National Products could sell products from canceled orders during the term of the Settlement. Plaintiffs argue that this view conflicts with the Court's finding that sale of TDI canceled goods was not permitted by the Settlement.

Plaintiffs' position is without merit for a number of reasons. *First*, the Court's conclusion of law is a different species from Mr. Sarabia's testimony about licensing business standards. These are ships passing in the night, not contradictory holdings. *Second*, currently pending before the Court is a Motion on this issue, which may result in a changed or modified opinion.[11] *Third*, an opinion that sales of the canceled TDI goods were permissible under the industry standards is still relevant to the good faith conduct of National Products. It may support a finding that National Products acted in good faith. The issue of whether National Products acted in good faith is raised by allegations in ¶24 of the First Amended Complaint which alleges wilful conduct and ¶8 of the Prayer which seeks exemplary damages for wilful infringement. Mr. Sarabia's opinions (see Sarabia Report, sections 9 and 10, pages 19 - 20) remain relevant and important under the Amended Complaint. The Ninth Circuit has affirmed the admission of expert testimony about industry standards as it may pertain to whether conduct is in good or bad faith:

"Defendants contend that Caliri's testimony that Defendants failed to

---

[10]Plaintiffs' motion in limine, page 4, lines 1 - 21.

[11]On February 27, 2012, the Court ruled that NPL had breached the Settlement Agreement by reselling the goods manufactured for delivery to NPL's customer TDI. That ruling was made ***without prejudice*** of NPL submitting to the Court alternative an theory or theories of contract interpretation not yet contemplated that would necessitate a different result. On April 13, 2012, NPL filed its Motion for Relief from Order Granting Summary Adjudication, and Supplemental Brief concerning Contractual Interpretation (Docket No. 361). NPL's Motion remains *sub judice* and, pursuant to the Court's Order of July 25, 2012 (Docket No. 453), will not be argued until September 10, 2012. Therefore, any and all motions *in limine* on the part of MGA to preclude evidence relating to whether or not the sale of the TDI cancelled order was in breach of the Settlement Agreement, based on the Court's ruling without prejudice, is premature and unripe for consideration at this time.

comport with industry standards inappropriately reached legal conclusions on the issue of bad faith and improperly instructed the jury on the applicable law. This argument is unavailing. Caliri's testimony did not improperly embrace the issue of bad faith under Fed. R. Evid. 704(a). While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law)." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016.

This is precisely why Mr. Sarabia should be allowed to testify whether NATIONAL PRODUCTS' sales of the TDI canceled goods was consistent with industry standards - because that may support a finding of good faith conduct by NATIONAL PRODUCTS.

Plaintiffs mischaracterize[12] the Sarabia Report to support its arguments. The Motion claims that Mr. Sarabia calculates damages in the case. Mr. Sarabia does not. Instead the Sarabia Report, (*See:* Sarabia Report, pages 22 - 23 (ECF 493-2) pages 77 - 78) discusses the sales under the License and places problems of various dollar amounts into perspective based on the standards of the industry. The Sarabia report sets some thresholds for materiality, a question of fact. Plaintiffs motion in limine fails to cite Ninth Circuit law on the issue of whether experts may give opinions on ultimate facts (such as the materiality of a breach). Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009), overruled on other grounds, Emery v. Clark, 643 F.3d 1210, 1215 (9th Cir. 2011), stated that "an expert may otherwise testify regarding even an ultimate issue to be resolved by the trier of fact." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016  also stated that ***"expert testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."*** (*emphasis added*) Mr. Sarabia's opinions on this subject fall well within the wide boundaries set by Briceno v. Scribner and  Hangarter v. Provident Life & Accident Ins. Co.

---

[12]Plaintiffs' motion in limine, page 5, line 24 - page 6, line 5.

Plaintiffs motion[13] in limine recasts Section 12 of the Sarabia Report (*See: Sarabia Report, pages 24 - 25(ECF 493-2) pages 79-80*) entitled: "It Is Common for Foreign Consumer Product Companies like National Products to Have an Independently Owned Service Center in the U.S. to Fill Small Orders and to Respond to Consumer Problems" which discusses foreign consumer product company practices with regards to service center, a topic about which the average juror would not know as an opinion about "breaches."[14] But that word is not even used in the section. Plaintiffs' motion closes its discussion of this section of the Sarabia Report by stating that the jury can analyze fulfillment centers - without any further explanation. Plaintiffs' motion does not provide any basis for exclusion of Mr. Sarabia's testimony as described in Section 12 of his Report.

This section of the Motion addresses Mr. Sarabia's Supplemental Report which contains his findings after doing Internet searches for products made by NATIONAL PRODUCTS which bear the "Little Tikes" trademark. This matter was placed at issue by paragraph 18 of the First Amended Complaint which alleges that NATIONAL PRODUCTS continues to advertise.

Attached as Exhibit "F" to the First Amended Complaint are Internet searches which are supposed to depict uses of the "Little Tikes" mark by NATIONAL PRODUCTS. Having placed the issue of Internet advertising in the First Amended Complaint, MGA should hardly be in a position to complain that an expert investigated the allegation. Mr. Sarabia carefully investigated this allegation and it is within the scope of his expertise to report what he found.

Plaintiffs' argument that Mr. Sarabia's conclusion - *that he could not find sales of "Little Tikes" toys made by **National Products** on the Internet* - lacks

---

[13]Plaintiffs' motion in limine, page 6, lines 8 - 16.
[14]Plaintiffs' motion in limine, page 6, line 8.

1  evidentiary foundation.[15] But Rule 703, <u>Federal Rule of Evidence</u> provides that
2  experts may form opinions based on information which is not admissible.[16] See <u>In
3  re Aircrash in Bali</u>, 684 F.2d 1301, 1314 (9th Cir. 1982).

4      While Plaintiffs claim[17] that Mr. Sarabia's testimony on this issue could
5  confuse the jury, Mr. Sarabia's opinion is clear and not confusing. After spending
6  several hours on searches in early April 2012, Mr. Sarabia did not find any vendor
7  who was selling a product with the trademark "Little Tikes" which was made by
8  National Products. Based on this research, Mr. Sarabia's opinion is: although
9  there are many responses to Internet searches using the words "national products
10 little tikes" and "little tikes national products," no toys made by National Products
11 and bearing the trademark "Little Tikes" are readily available on the Internet.[18]

12     Plaintiffs motion[19] focuses on Mr. Sarabia's Second Supplemental Report.
13 (*See:* Sarabia Second Supplemental Report (ECF 493-2) page 101). In the Second
14 Supplemental Report, Mr. Sarabia explained that he reviewed documents
15 produced by nine retailers to whom Plaintiffs issued subpoenas. Plaintiffs argue
16 that the problem with this report is that Mr. Sarabia just summarized the
17 documents. That is not correct. The retailers produced thousands of documents of
18 many different types, in many different formats. Many of those documents had
19 nothing to do with the issue being investigated by Mr. Sarabia. His first step was

---

[15] Plaintiffs motion in limine, page 6, line 28 - page 7, line 10.

[16] Rule 703, <u>Federal Rules of Evidence</u>, Bases of an Expert's Opinion Testimony states:
    "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably ***rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted***. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." (***emphasis added***)

[17] Plaintiffs' motion in limine, page 7, lines 11 - 17.

[18] Sarabia Supplemental Report, p. 1.

[19] Plaintiffs' motion in limine, page 7, line 21 - page 8, line 8.

to sort the documents produced, using his industry experience. That experience was described in Mr. Sarabia's report (*See:* Sarabia Report, page 5 (ECF 493-2) page 60).

> "For twenty-five years I have worked in the consumer product business as a business person and attorney. I have been in factories and shipping warehouses many times. I have worked closely with companies in connection with their sales and distribution of consumer goods. I am familiar with the storage, shipment and distribution of consumer products."

Using his experience with consumer product sales, Mr. Sarabia separated the wheat from the chaff, isolating only those documents produced by the nine retailers which pertained to purchases from NATIONAL PRODUCTS. It is this separation of the wheat from the chaff which required expertise. Next he segregated the documents further by time period (only those relating to sales after October 31, 2008). Finally, he asked NATIONAL PRODUCTS for information about its transactions with the nine retailers and reached his conclusion.

This is not a task a trier of fact could do. But the results of this analysis certainly would be of interest to the trier of fact because ¶18 of the First Amended Complaint alleges "that after the License Agreement was terminated, and the sell-off expired, Defendants continued to manufacture, market, advertise and sell children's product bearing the "Little Tikes" mark . . ." Mr. Sarabia's Second Supplemental Report directly pertains to this allegation - whether there were or were not sales by National Products, after the sell-off period, to these nine retailers.

In addressing Mr. Sarabia's Rebuttal Report to the Reports by MGA experts Mr. Lyons and Mr. Simon, although Plaintiffs[20] correctly state that Mr. Sarabia opined that Mr. Lyon's Report fell below the standard of care of "an accountant engaged as an expert in a licensing case." Plaintiffs then go off the tracks by stating that the only reason Mr. Sarabia made this conclusion was because of Mr.

---

[20]Plaintiffs' motion in limine, page 8, line 12 to page 9, line 14.

Lyon's analysis of the TDI canceled goods. That is not correct.

There are three main reasons why Mr. Sarabia reached the conclusion that Mr. Lyons' Report fell below the standard of care of "an accountant engaged as an expert in a licensing case:" *First,* Mr. Lyons failed to do a royalty audit or analysis contrary to both standard practices in licensing disputes and the view of MGA's expert on licensing, Mr. Simon: "[t]he close relationship of Fun Creations, Inc. and National Products, Ltd. also supports the importance of an audit to confirm royalty payments were appropriately made." Simon Report ¶31. (*See:* Sarabia Rebuttal Report, pages 1 - 2 (ECF 493-2) pages 105-106). *Second,* as an experienced accountant, but a relative novice to licensing, Mr. Lyons should have consulted with MGA's licensing expert (or another licensing expert) prior to doing his work, but he did not. (*See:* Sarabia Rebuttal Report, page 3, ¶1 (ECF 493-2) page 107), and *Third,* Mr. Lyon's reached conclusions contrary to the weight of his data. Mr. Sarabia's section 2 is entitled "Mr. Lyons' Data Contradicts his Damage Calculations." (*See:* Sarabia Rebuttal Report pages 4 - 11 (ECF 493-2) pages 115). This section reveals Mr. Lyons' stunning conversion of clear sworn testimony into the opposite of what it says. (*See:* Sarabia Rebuttal Report pages. 5 - 6 (ECF 493-2) pages 109-110)

Once off the track, Plaintiffs' motion then repeats its earlier argument that Mr. Sarabia should not be allowed to opine about whether National Products reasonably could have excluded the TDI goods from the inventory to the Settlement. This argument was answered above by pointing out that whether the conduct of National Products was in good faith is at issue in the Amended Complaint and therefore Mr. Sarabia should be allowed to opine on the subject of licensing business standards as they pertain to the TDI goods.

Next Plaintiffs' motion says that Mr. Sarabia should not be allowed to opine that "[u]nder the standards of the consumer product licensing business, sales of goods made by a licensee during the time it was permitted to label and sell goods

are not an infringement." citing Sarabia Rebuttal Report, p. 16. But there is no argument or citation in support of this position. This is a perfectly appropriate subject of testimony by a licensing expert such as Mr. Sarabia.

Dated: August 21, 2012                              HANEY TORBETT LLP

/s/
Steven H. Haney
Attorneys for Defendants
NATIONAL PRODUCTS, LTD., and
PLAYMIND, LTD.