1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MGA ENTERTAINMENT, INC., a        ) No.  CV 10-07083 JAK (SSx)
   | California corporation; THE       )
12 | LITTLE TIKES COMPANY, INC., an   )
   | Ohio corporation,                 ) **MEMORANDUM AND ORDER DENYING**
13 |                                   ) **DEFENDANTS' MOTION FOR LEAVE TO**
   |              Plaintiffs,           ) **FILE MOTION FOR SANCTIONS IN**
14 |                                   ) **CONNECTION WITH PLAINTIFFS'**
   |                                   ) **ACTIONS REGARDING THE JANUARY 31,**
15 |         v.                         ) **2012 NEWELL RUBBERMAID PERSON(S)**
   |                                   ) **MOST KNOWLEDGEABLE DEPOSITION**
16 |                                   ) **(Dkt. No. 462)**
   | NATIONAL PRODUCTS LTD., a Hong )
17 | Kong corporation; PLAYMIND        )
   | LTD., a Hong Kong corporation; )
18 | THE PLAYMIND GROUP, a Hong Kong)
   | corporation; and DOES 1 through )
19 | 10, inclusive,                    )
   |                                   )
20 |              Defendants.           )
   | _____)

21

22       On August 2, 2012, Defendants filed a "Motion for Leave to File

23 Motion for Sanctions in Connection with Plaintiffs' Actions Regarding

24 the January 31, 2012 Newell Rubbermaid Person(s) Most Knowledgeable

25 Deposition." (Dkt. No. 462).  On August 15, 2012, the District Judge

26 referred the Motion to the Magistrate Judge for determination.  (Dkt.

27 No. 495).   The Court held a telephonic hearing on the Motion on

28 September 11, 2012.  For the reasons stated below, the Motion is DENIED.

## I.

### FACTUAL BACKGROUND AND THE PARTIES' CONTENTIONS

Defendants' request for leave to file a motion for sanctions, as presented in the Motion, arises out of the attempted deposition of Newell Rubbermaid, a corporation.  Plaintiff MGA acquired The Little Tikes Company, whose trademark is at issue in this suit, from Newell Rubbermaid in November 2006.  (Motion at 2).  On January 20, 2012, Defendants noticed the deposition of Newell Rubbermaid's person most knowledgeable for January 31, 2012 in Atlanta, Georgia.  (Id. at ii, 3; id. Exh. B at 1).  On January 30, 2012, the District Judge ordered the Newell Rubbermaid deposition to proceed as noticed.  (Id. Exh. A at 2 (Dkt. No. 280)).  On the evening of January 30, 2012, after Defendants' counsel had already flown to Atlanta, Plaintiffs informed Defendants via email that they intended to seek a protective order to prevent Newell Rubbermaid from producing the stock purchase agreement between MGA and Newell Rubbermaid on the ground that the document contained confidential business information.  (Id. at 5).  However, no such protective order was obtained.

At the deposition, Plaintiffs' counsel, appearing via videoconference, objected to questions relating to provisions in the agreement covered by the confidentiality clause.  (Id. at 6; id. Exh. E at 10 (excerpts of Mark W. Johnson deposition)).  According to Defendants, "[b]ased on that objection, Newell Rubbermaid refused to produce the document, or to give any testimony on the transfer of Little Tikes from Newell Rubbermaid to MGA."  (Id. at 6; see also id. Exh. E at

2

11). Plaintiffs' challenge this assertion, claiming that the deposition was cancelled because the witness was an inadequate 30(b)(6) witness.

After an hour of questions, Defendants cancelled the deposition. Plaintiffs eventually withdrew their objection to production of the agreement and provided a copy of the stock purchase agreement to Defendants on February 7, 2012. (Id. at 5). On June 1, 2012, Defendants resumed the deposition in Atlanta, this time with a different witness as Newell Rubbermaid's person most knowledgeable. (Id. at ii; id., Exh. O (excerpts of Andrew Rudd deposition)).

Defendants seek $7,575.38 in sanctions against Plaintiffs and their attorneys for "wrongfully obstructing" the January 31, 2012 Newell Rubbermaid deposition. (Id. at ii). Defendants contend that Plaintiffs "knew or should have known" that the confidentiality provision of the stock purchase agreement had lapsed no later than November 2011, well before the January 31, 2012 deposition, and therefore Plaintiffs' objections were frivolous. (Id. at 8, 13). Defendants further contend that even if the agreement did contain confidential information, Plaintiffs waived their right to object to its discoverability by failing to notify Defendants of their intent to move for a protective order until the evening of January 30, 2012, after Defendants' counsel had flown to Atlanta for the January 31 deposition. (Id. at 17).

At the hearing, Plaintiffs conceded that their objection at the deposition based on the confidentiality of the Newell Rubbermaid stock purchase agreement was in error. However, Plaintiffs explained that Defendants' counsel cancelled the January 31 deposition not because

1  Newell Rubbermaid refused to produce a copy of the stock purchase
2  agreement or testify about its contents, but because Defendants' counsel
3  determined that the witness, Mark Johnson, was not prepared to address
4  some or all of the 30(b)(6) topics.  In support of their argument,
5  Plaintiffs read to the Court extended portions of the Johnson deposition
6  transcript that were not included in the excerpts attached to
7  Defendants' Motion.  These passages revealed that Defendants repeatedly
8  expressed concern in the latter part of the deposition that Mr. Johnson
9  was unable to respond knowledgeably about certain topics.  Plaintiffs
10 further argued that to the extent that Mr. Johnson was unprepared,
11 Defendants are largely responsible because they did not respond to
12 Newell Rubbermaid's efforts to confer before the deposition about the
13 topics Defendants intended to pursue and which witness Newell Rubbermaid
14 should prepare.

15

16                            **II.**

17                        **DISCUSSION**

18

19 **A.   The Court Has Authority To Impose Sanctions For Discovery Abuses**
20     **Under Its Inherent Power To Oversee Discovery And Under Rule 37,**
21     **But A Motion For Sanctions Must Be Timely**

22

23     Two sources of authority permit a district court to sanction a
24 party for discovery-related abuses: (1) the inherent power of federal
25 courts to levy sanctions in response to "abusive litigation practices,"
26 Fielstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337–38 (9th Cir. 1985),
27 and (2) Rule 37's authorization to sanction a party who "fails to obey
28 an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(C).

                                  4

1    "[D]istrict courts enjoy very broad discretion to use sanctions
2    where necessary to insure . . . that lawyers and parties . . . fulfill
3    their high duty to insure the expeditious and sound management of the
4    preparation of cases for trial." Lee v. Max Int'l, LLC, 638 F.3d 1318,
5    1320 (10th Cir. 2011) (internal citation and quotation marks omitted).
6    Under its "inherent powers," in contrast to more specific statutory
7    sanction provisions, a district court may sanction a "broad range of
8    improper litigation tactics," Knupfer v. Lindblade (In re Dyer), 322
9    F.3d 1178, 1196 (9th Cir. 2003), when a party or counsel acts "in bad
10   faith, vexatiously, wantonly, or for oppressive reasons." Primus Auto.
11   Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997). "[A]n
12   inherent powers sanction is meant to do something very different than
13   provide a substantive remedy to an aggrieved party. An inherent powers
14   sanction is meant to 'vindicate judicial authority.'" Mark Indus. v.
15   Sea Captain's Choice, 50 F.3d 730, 733 (9th Cir. 1995) (quoting Chambers
16   v. NASCO, Inc., 501 U.S. 32, 55, 111 S. Ct. 2123, 115 L. Ed. 2d 27
17   (1991)).

18

19   "[S]anctions imposed under the district court's inherent authority
20   require a bad faith finding." Lahiri v. Universal Music & Video
21   Distrib. Corp., 606 F.3d 1216, 1219 (9th Cir. 2010). A party
22   "demonstrates bad faith by delaying or disrupting the litigation or
23   hampering enforcement of a court order." Primus Auto. Fin. Servs., 115
24   F.3d at 649 (internal quotation marks omitted). "[A] finding of bad
25   faith 'does not require that the legal and factual basis for the action
26   prove totally frivolous; where a litigant is substantially motivated by
27   vindictiveness, obduracy, or mala fides, the assertion of a colorable
28   claim will not bar the assessment of attorney's fees.'" In re Itel Sec.

5

1  <u>Litig.</u>, 791 F.2d 672, 675 (9th Cir. 1986) (quoting <u>Lipsig v. Nat'l</u>
2  <u>Student Mktg. Corp.</u>, 663 F.2d 178, 182 (D.C. Cir. 1980) (per curiam));
3  <u>see also</u> <u>Fink v. Gomez</u>, 239 F.3d 989, 992 (9th Cir. 2001) ("[S]anctions
4  are justified when a party acts for an improper purpose -- even if the
5  act consists of making a truthful statement or a non-frivolous argument
6  or objection.").  The bad faith requirement ensures that the district
7  court's exercise of its broad power is properly restrained, and
8  "preserves a balance between protecting the court's integrity and
9  encouraging meritorious arguments." <u>Primus Auto. Fin. Servs.</u>, 115 F.3d
10 at 649.

11

12     In addition to the Court's inherent powers to impose sanctions,
13 "[a] district court has wide discretion to impose sanctions, including
14 severe sanctions, under Federal Rule of Civil Procedure 37, and its
15 ruling will be reversed only if it constitutes an abuse of discretion."
16 <u>Design Strategy, Inc. v. Davis</u>, 469 F.3d 284, 294 (2nd Cir. 2006).
17 Unlike sanctions imposed under a court's inherent powers, Rule 37
18 sanctions generally do not require a showing of bad faith or willfulness
19 unless the sanction is case-dispositive.  <u>See</u> <u>Hyde & Drath v. Baker</u>, 24
20 F.3d 1162, 1171 (9th Cir. 1994) ("We have not required a finding of bad
21 faith on the part of the attorney before imposing sanctions under Rule
22 37. . . . While a finding of bad faith is not a requirement for imposing
23 sanctions, good or bad faith may be a consideration in determining
24 whether imposition of sanctions would be unjust."); <u>Commodity Futures</u>
25 <u>Trading Commission v. Noble Metals International, Inc.</u>, 67 F.3d 766,
26 770-71 (9th Cir. 1995) (case-dispositive sanctions require showing of
27 "willfulness, bad faith, or fault of the party").

28

1    Rule 37 authorizes the imposition of sanctions against a party who:
2    unsuccessfully brings or opposes a discovery motion without substantial
3    justification; disobeys a court's discovery order; fails to make
4    required Rule 26(a) or (e) disclosures or to participate in framing a
5    discovery plan as required by Rule 26(f); or fails to respond to
6    properly served discovery requests.  Fed. R. Civ. P. 37(a-d & f).  The
7    purpose of the Rule is to "protect courts and opposing parties from
8    delaying or harassing tactics during the discovery process." Cunningham
9    v. Hamilton County, 527 U.S. 198, 208, 119 S. Ct. 1915, 144 L. Ed. 2d
10   184 (1999).  Discovery conduct is "substantially justified if it is a
11   response to a 'genuine dispute or if reasonable people could differ as
12   to the appropriateness of the contested action.'" Devaney v.
13   Continental American Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993)
14   (quoting Pierce v. Underwood, 487, 552, 565, 108 S. Ct. 2541, 101 L. Ed.
15   2d 490 (1988)).  The trial court has "broad discretion" to evaluate the
16   justification proffered.  Carr v. Deeds, 453 F.3d 593, 602 (4th Cir.
17   2006); see also Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir.
18   1978).

19

20   It is generally agreed that a motion for sanctions, regardless of
21   the source of authority for the imposition of sanctions, must be timely
22   filed.  Although Rule 37 does not establish "any express time limits
23   within which a motion for sanctions must be filed, unreasonable delay
24   may render such a motion untimely." Long v. Howard University, 561 F.
25   Supp. 2d 85, 91 (D. D.C. 2008) (citing Brandt v. Vulcan, Inc. 30 F.3d
26   752, 756 (7th Cir. 1994)); see also Mercy v. County of Suffolk, New
27   York, 748 F.2d 52, 56 (2d Cir. 1984) ("[A] motion for Rule 37 sanctions
28   should be promptly made, thereby allowing the judge to rule on the

matter when it is still fresh in his mind."). Courts have also found that unreasonable delay in filing a motion for sanctions under the court's inherent powers may render the request untimely. See Clark v. United States, 2011 WL 66181 at *4 (D. Hawaii Jan. 7, 2011); cf. Peer v. Lewis, 606 F.3d 1306, 1313 (11th Cir. 2010) ("'Ordinarily the motion [for sanctions under Rule 11] should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . .'") (quoting Fed. R. Civ. P. 11 advisory committee note (1993 amendments)). "The timeliness of a motion for sanctions [relating to discovery] depends on such factors as when the movant learned of the discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed." Long, 561 F. Supp. 2d at 91.

**B.   Defendants' Fail To Persuade The Court That Plaintiffs' Conduct Caused The Cancellation Of The Deposition**

Defendants do not specify whether they are seeking sanctions based on the Court's inherent powers or under Rule 37.  To the extent that Defendants are relying on the Court's inherent powers, the sanctions motion would fail because Defendants have not shown that Plaintiffs' isolated objection, subsequently withdrawn, was made in bad faith or was "substantially motivated by vindictiveness, obduracy, or mala fides." In re Itel Sec. Litig., 791 F.2d at 675.  Even if the objection was mistaken, negligence or ignorance do not compel a finding of bad faith. Additionally, the materiality of Plaintiffs' objection to the costs that Defendants incurred in connection with the January 31 deposition is questionable.  The Court is not persuaded that Defendants' decision to

1  cancel Mr. Johnson's deposition was based entirely on the parties'
2  dispute over the discoverability of the stock purchase agreement as
3  opposed to Defendants' objection to the selection of Mr. Johnson as
4  Newell Rubbermaid's person most knowledgeable.  Defendants did not
5  dispute at the hearing that they were dissatisfied with Mr. Johnson's
6  preparation or that they negotiated with Newell Rubbermaid following the
7  deposition to designate another witness with personal knowledge of the
8  facts at issue.  At the very least, it appears that Mr. Johnson's
9  ability to serve as Newell Rubbermaid's person most knowledgeable was a
10 significant, and perhaps deciding, factor in Defendants' decision to
11 cancel the deposition.  Accordingly, Defendants have failed to persuade
12 the Court that they are entitled to sanctions based upon Plaintiff's
13 conduct.

14

15 **C.   <u>In The Alternative, The Motion Must Be Denied As Untimely</u>**

16

17       Even if the Court were persuaded that Plaintiffs were largely at
18 fault for the cancellation of Mr. Johnson's deposition or that their
19 objection could somehow be construed under Rule 37 as a violation of the
20 District Judge's Order that the Newell Rubbermaid deposition go forward,
21 the Court would still deny Defendants' motion because it is untimely.
22 Defendants were fully on notice of Plaintiffs' purportedly improper
23 behavior as of January 31, 2012 but did not file the instant Motion
24 until over six months later, on August 2, 2012, after the main discovery
25 period had closed.  (Dkt. No. 462).  Even taking into account the one-
26 month stay in this matter between February 27, 2012 and March 26, 2012,
27 Defendants' delay was unreasonable.

28

1   The discovery period in this matter has been extended only in
2   increments and the Parties have been on notice since the beginning of
3   this year that the close of discovery was imminent.   The District
4   Judge's January 30, 2012 Order authorizing the Newell Rubbermaid
5   deposition to proceed on January 31 extended the fact discovery deadline
6   only until February 14, 2012.  (Dkt. No. 280).   The Court subsequently
7   ordered a one-month stay on proceedings, which was lifted on March 26,
8   2012.  (Dkt. No. 350).   In the Order lifting the stay, the Court stated
9   "given that the discovery cut-off date has passed, counsel are directed
10  not to file any additional motions before Magistrate Judge Segal until
11  after April 9, 2012, at which time the Court will determine whether it
12  will continue any dates set in this matter, including the cut-off for
13  the filing of motions."  (Id. at 2).   On April 9, 2012, the District
14  Judge extended the fact and expert discovery cut-off to June 29, 2012.
15  (Dkt. No. 357 at 3).   The Court also set July 30, 2012 as the "[l]ast
16  day to hear motions" and specified that "[a]ll motions are to be
17  authorized by the Court prior to filing."  (Id.).   On April 18, 2012,
18  the District Judge ordered the Newell Rubbermaid deposition to be
19  completed.  (Dkt. No. 373 at 1).   On May 10, 2012, more than seven weeks
20  before the pending discovery cut-off, the District Judge denied without
21  prejudice Defendants' request to file a motion for sanctions and ordered
22  the parties to meet and confer regarding sanctions issues relating to
23  the "initial [January 31, 2012] session of the [Newell Rubbermaid]
24  deposition or the [scheduled] May 18, 2012 session."  (Dkt. No. 393 at
25  1).   After June 29, 2012, the District Judge has allowed limited
26  discovery motion practice only upon prior approval of the Court.  (See,
27  e.g., July 10, 2012 Order, Dkt. No. 441 at 1 (granting Plaintiffs' Ex
28  Parte Application for Permission to File Motion to Compel); July 30,

10

1  2012 Order, Dkt. No. 465 (authorizing Defendants and Plaintiffs to file

2  specific motions to compel)).

3

4  In sum, with certain ad hoc exceptions relating to motions to

5  compel the production of evidence relating to the Parties' substantive

6  claims and defenses, discovery closed at the end of June 2012.

7  Defendants were well aware that the fact discovery cut-off was June 29

8  and that the Court had set July 30 as the last day to hear motions, and

9  yet did not file a motion for sanctions before those dates.  Even if the

10 District Judge had continued the discovery cut-off for all purposes,

11 Defendants could not have relied on that possibility and should have

12 filed any motion for sanctions by the end of June to allow for a hearing

13 before the end of July.  Furthermore, unlike the discovery motion

14 practice the District Judge has specifically authorized since June 29,

15 2012, Defendants' request for permission to file a motion for sanctions

16 does not involve the production of evidence relevant to the substantive

17 issues in this case.  Despite having had ample opportunity to file a

18 motion for sanctions, and indeed, after being specifically ordered by

19 the District Judge on May 10, 2012 to meet and confer regarding

20 sanctions issues, Defendants allowed the June 29, 2012 fact discovery

21 cut-off and the July 30, 2012 motion hearing cut-off to pass without

22 bringing the matter to the Court's attention, which constituted an

23 unreasonable delay.

24

25 The Court finds that Defendants have failed to establish an

26 entitlement to sanctions on the merits because the Court is not

27 convinced that Plaintiffs' objection was the motivating reason behind

28 the cancellation of Mr. Johnson's deposition.  The Court also finds that

1   Defendants' proposed Motion is untimely.  Consequently, Defendants'

2   Motion for Leave to File Motion for Sanctions is DENIED.

3

4        IT IS SO ORDERED.

5

6   DATED:  September 14, 2012

7

8                                    _____/S/_____
                                     SUZANNE H. SEGAL
9                                    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28